# FOR PUBLICATION

APPELLANT PRO SE:

**KELLY SCOTT THOMAS**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

FILED

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KELLY SCOTT THOMAS, | ) |
| | ) |
| Appellant- Petitioner, | ) |
| | ) |
| vs. | )   No. 20A05-1111-PC-651 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee- Respondent, | ) |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0407-MR-95

**March 19, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Kelly Scott Thomas was convicted of felony murder and sentenced to sixty-five years in prison. After this court affirmed Thomas's convictions, he filed a petition for post-conviction relief, but thereafter the post-conviction court granted his motion to withdraw his petition without prejudice. Thomas filed a second petition for post-conviction relief. He then filed a motion for an indefinite continuance, which the post-conviction court denied, and a motion to withdraw his petition, which the post-conviction court also denied. The post-conviction court denied his petition for post-conviction relief. Thomas, pro se, raises four issues for our review, which we consolidate and restate as: (1) whether the post-conviction court abused its discretion in denying Thomas's second motion to withdraw his petition; (2) whether the post-conviction court erred in concluding Thomas received effective assistance of trial and/or appellate counsel; and (3) whether Thomas's due process rights were violated by the State's non-disclosure of an alleged agreement with one of its witnesses, Stacey Orue.

Concluding the post-conviction court did not abuse its discretion by denying Thomas's motion to withdraw his petition, Thomas has failed to meet his burden of establishing that either his trial or appellate counsel provided ineffective assistance, and Thomas's due process rights were not violated because the evidence does not confirm a leniency agreement was made, we affirm the post-conviction court's denial of Thomas's motion to withdraw his petition and its denial of his petition for post-conviction relief.

## Facts and Procedural History

In 2003, Gwendolyn Hunt was shot and killed in her home, and the State charged Thomas, Orue, and Kevin Taylor with felony murder. The three defendants were initially

tried together, and a jury found all three guilty of felony murder. The trial court sentenced Thomas to sixty-five years in prison. Thomas appealed his conviction, and we reversed due to an instructional error and remanded to the trial court for a new trial. Brief of Appellee at 2 (citing Thomas v. State, No. 20A03-0503-CR-138 (Ind. Ct. App., Feb. 3, 2006)). After a retrial of Thomas alone in 2007, the jury found Thomas guilty of felony murder again, and the trial court sentenced him to sixty-five years in prison. We affirmed Thomas's conviction. Thomas v. State, No. 20A05-0709-CR-546, 887 N.E.2d 1031 at *3 (Ind. Ct. App., May 30, 2008), trans. denied.

In 2008, Thomas filed a petition for post-conviction relief. In April 2009, the post-conviction court granted Thomas's motion for a continuance, and in October 2009, the post-conviction court granted Thomas's motion to withdraw his post-conviction petition without prejudice. In June 2010, Thomas filed a second petition for post-conviction relief. In February 2011, Thomas filed a motion for an indefinite continuance. Following a hearing, the post-conviction court denied Thomas's motion and reset the post-conviction hearing for October 2011. Thomas's public defender withdrew in May 2011, and in June 2011, Thomas filed a motion to withdraw his post-conviction petition without prejudice. The State filed an objection to Thomas's motion to withdraw. At a hearing on October 13, 2011, the post-conviction court denied Thomas's motion and conducted the post-conviction hearing. The post-conviction court subsequently issued findings of fact and conclusions of law denying Thomas's petition, including in pertinent part:

> 19. In his Petition for Post Conviction Relief, Petitioner alleged ineffective assistance of trial counsel for failure to impeach State's witness, Stacy [sic] Orue; and, ineffective assistance of appellate counsel for failure to raise

3

sufficiency of the evidence as an issue on direct appeal. Further review of the current Petition filed on June 29, 2010, reveals that said Petition is a duplicate copy of the Petition filed on December 18, 2008, which Petitioner, by counsel, moved to withdraw on October 13, 2009. No new meritorious grounds for relief were stated. Nonetheless, the court will address Petitioner's claims.

* * *

22. On direct appeal, Petitioner raised the issue of whether he was denied the right to confrontation with respect to the testimony of Stacy [sic] Orue. The Indiana Court of Appeals found that the trial court gave Petitioner the opportunity to depose Ms. Orue and he did not avail himself of that opportunity. Moreover, Petitioner was able to challenge the credibility of Orue's testimony in his cross-examination, and the record establishes that counsel for Petitioner did so. Additionally, the Court found that while Orue's testimony was detrimental to Petitioner's case, it was merely cumulative of a "wealth of additional evidence presented by the State." In sum, in affirming his conviction, the Court of Appeals held that there was "plentiful evidence" against Petitioner. . . .

23. As demonstrated above, the issues about which Petitioner complains in his Petition for Post Conviction Relief have been determined by the appellate court and are, therefore, unavailable for review in this post conviction proceeding. Even if raised in the context of an ineffective assistance of counsel claim, as Petitioner has done in the instant case, it has been determined that trial counsel did cross examine Ms. Orue. Accordingly, Petitioner's ineffective assistance of trial counsel claim fails. Additionally, appellate counsel cannot be deemed ineffective for failing to raise a sufficiency of the evidence claim when the appellate court has already held that the evidence in this case against Petitioner was more than sufficient. . . . For this reason, Petitioner has not shown a reasonable probability that the outcome of his appeal would have been different if appellate counsel had raised any other issue. Accordingly, Petitioner did not receive ineffective assistance of appellate counsel.

Appellant's Appendix at 31-33.

Thomas now appeals.

## Discussion and Decision

### I. Thomas's Motion to Withdraw His Petition for Post-Conviction Relief

Thomas argues the post-conviction court abused its discretion by denying his second motion to withdraw his petition for post-conviction relief. Indiana Post-

4

Conviction Rule 1(4)(c) gives post-conviction courts the discretion to grant a petitioner's motion to withdraw his petition. Specifically, it provides "[a]t any time prior to entry of judgment the court may grant leave to withdraw the petition." Thus, we will overturn a post-conviction court's grant or denial of a motion to withdraw a petition "only when the court reached an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom." Tapia v. State, 753 N.E.2d 581, 585 (Ind. 2001) (quotation and citation omitted).

Thomas argues that in order for a post-conviction court to deny a motion to withdraw a petition for post-conviction relief, there must be a showing that withdrawal would substantially prejudice the State, citing Tucker v. State, 786 N.E.2d 710 (Ind. 2003), for support. There, Tucker's motion to withdraw his petition for post-conviction relief was denied, and Tucker argued to our supreme court that he had a right to withdraw his petition without prejudice absent a showing of substantial prejudice to the State. Id. at 711. In discussing the petitioner's proposed standard for a post-conviction court's review of a motion to withdraw a petition, our supreme court discussed its prior case, Tapia, noting its statement that "[w]hile prejudice to the non-moving party is one indicia of an abuse of discretion, it is not a proxy for the post-conviction court's discretion . . . ." Id. at 712 (quoting Tapia, 753 N.E.2d at 585-86) (internal quotations omitted). Our supreme court then went on to discuss the difficulty the Indiana Public Defender's Office faced in meeting its then-statutory obligation of representing every incarcerated indigent post-conviction petitioner, even when, as in that case, the actions of the Public Defender appeared to be diligent and timely. Id. (citing Ind. Code § 33-1-7-2(a) (repealed 2004)).

5

The court in Tucker concluded that without a showing of an improper purpose for the motion to withdraw or of substantial prejudice to the State, the post-conviction court abused its discretion by denying the motion to withdraw. Id. at 713.

In Tapia, our supreme court reviewed a post-conviction court's denial of a motion to withdraw a petition for post-conviction relief and concluded the court's denial was not an abuse of discretion. 753 N.E.2d at 586. The court noted that Tapia "made little effort to explain what he would gain by delaying the proceedings" other than his claim that "he 'recently discovered substantial errors which he verily believes warrant relief.'" Id. Our supreme court concluded "[t]he post-conviction court could balance what speculative benefit Tapia would derive from a delay against the costs to the court in wasted time, and conclude that Tapia was not entitled to withdraw his petition" because "[w]ithout any valid explanation as to what would be gained from further delay, we cannot say that the post-conviction court abused its discretion by rejecting Tapia's motion." Id.

Here, Thomas had already filed an initial petition for post-conviction relief, and the post-conviction court granted both a motion to continue and then a motion to withdraw his petition. The petition at issue here is his second petition for post-conviction relief, and his stated reason for asking the court to withdraw his petition is that newly discovered evidence may come to light during Taylor's retrial.[1] Thomas is correct that the State's only claim of prejudice if the post-conviction court were to grant Thomas's motion to withdraw is that the State would have to use additional time and resources if Thomas filed a third petition for post-conviction relief after Taylor's retrial. However, as

_____

[1] While it is clear from Thomas's brief that Taylor's retrial was scheduled sometime after Thomas's post-conviction hearing, nothing in the record substantiates this or indicates when Taylor's retrial was or is set to occur.

our supreme court stated, prejudice to the non-moving party, or lack thereof, is one indicator, but it is not always determinative of whether the post-conviction court abused its discretion. We conclude the post-conviction court's denial of Thomas's motion to withdraw his petition was not clearly against the logic and effect of the facts and circumstances before the court. Any benefit Thomas could derive from the delay was speculative, and the post-conviction court could properly balance the speculative benefit against the costs to the court and the State in wasted time. See Tapia, 753 N.E.2d at 586. Further, Thomas already had ample opportunity to conduct discovery himself. It was not an abuse of the post-conviction court's discretion to refuse Thomas's request to withdraw his petition based on his hope of an evidentiary windfall from Taylor's retrial.

## II.  Ineffective Assistance of Counsel

### A.  Standard of Review

The standard for gauging appellate counsel's performance is the same as that for trial counsel. Allen v. State, 749 N.E.2d 1158, 1166 (Ind. 2001), cert. denied, 535 U.S. 1061(2002). To succeed on a claim of ineffective assistance of counsel, a petitioner must show by a preponderance of the evidence that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) that, but for counsel's unprofessional errors, the result would have been different. Stevens v. State, 770 N.E.2d 739, 746 (Ind. 2002). A strong presumption exists that counsel rendered adequate assistance and used reasonable professional judgment. Id. In determining strategy and tactics, counsel is afforded considerable discretion, and isolated mistakes, poor strategy, inexperience, or instances of bad judgment do not necessarily render representation ineffective. Id. at 746-47.

## B. Trial Counsel

Thomas argues he received ineffective assistance of trial counsel in two respects. First, he claims his counsel failed to adequately impeach one of the State's witnesses, Stacey Orue, on cross-examination. Second, he claims his counsel should have objected to the State's closing argument when the State allegedly vouched for its witnesses. As to his attorney's impeachment of Orue, Thomas points to the fact that his counsel did not impeach Orue regarding a sworn petition for post-conviction relief wherein she stated she took no part in the crime even though, at Thomas's trial, she testified she was present in Hunt's apartment when Thomas robbed and shot Hunt.

However, as the State points out, Thomas's counsel did impeach Orue in several ways, including inconsistent statements regarding her presence at the scene of the crime. First, counsel extracted information from Orue about her prior cocaine and prostitution habits, as well as her prior convictions, including felony murder for the robbery and death of Hunt. Second, Orue admitted that she lied to police when they initially interviewed her after the incident. Last, and most importantly, counsel succeeded in getting Orue to admit that she had repeatedly stated she was not present in Hunt's residence when the crime occurred. We cannot say Thomas's trial counsel performed in an unreasonable manner. The point Thomas argues should have been elicited at trial – that Orue's testimony about what happened at Hunt's residence was untrustworthy because she previously claimed she was not even present in the apartment – was in fact elicited. The manner in which it was brought forth is a matter of strategy and even if a better strategy could have been chosen, this does not amount to ineffective assistance of counsel. Further, even if this was an unreasonable performance by Thomas's counsel, it is unlikely

8

the result of Thomas's trial would have been any different if Orue had been impeached concerning her sworn petition because the jury was already presented with evidence of Orue's contradictory statements.

Thomas next argues his trial counsel should have objected during the State's closing argument because he contends the State improperly vouched for its witnesses. Thomas is correct that a prosecutor may not state his or her personal opinion regarding the credibility of a witness during trial. See Schlomer v. State, 580 N.E.2d 950, 957 (Ind. 1991) ("[i]t is improper for the prosecutor to make an argument which takes the form of personally vouching for the witness"); see also Gaby v. State, 949 N.E.2d 870, 880-81 (Ind. Ct. App. 2011) (concluding prosecutor's statements that "I cannot and would not bring charges that I believe were false" and "I can tell you that with a guilty verdict on this case I will be able to sleep fine tonight. Just fine. In fact, better than fine. You will be able to also" were improper vouching). However, a prosecutor may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented in the trial. Gaby, 949 N.E.2d at 881.

Here, Thomas points to page 542 of the Transcript in arguing that the State improperly vouched for its witnesses. Thomas does not provide us with any further detail about which statements he claims amount to vouching,[2] but to address the merits of his claim we will assume he is referencing the State's discussion of the importance of witness credibility, and, specifically, the statement that "I'd like to discuss with you why

---

[2] Parties to an appeal are required to present "cogent argument supported with adequate citation to authority because it promotes impartiality in the appellate tribunal. A court which must search the record and make up its own arguments because a party has not adequately presented them runs the risk of becoming an advocate rather than an adjudicator. A brief should not only present issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues. On review, we will not search the record to find a basis for a party's argument nor will we search the authorities cited by a party in order to find legal support for its position." Young v. Butts, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997) (citations omitted).

we believe on behalf of the state that these witnesses are credible." Tr. at 542. After making this statement, the State described common reasons witnesses lack credibility, such as personal interests, bias, and prejudice. The prosecutor then discussed each witness or group of witnesses and the circumstances of each that were presented to the jury. The prosecutor pointed out that neighbors who testified were innocent bystanders who just happened to live above Hunt, that the testifying police officers' interests were in seeing the crime get solved correctly, and that, even though defense counsel cross-examined each witness and attempted to reveal issues of credibility, no such issues arose. The State also informed the jury that credibility can be blurred for physical reasons, such as a witness being on drugs at the time of an incident, or for nervous or otherwise untrustworthy behavior while testifying, and that those issues were not presented with the State's witnesses. We conclude the prosecutor's statements did not amount to improper vouching, but rather, were comments regarding witness credibility based on the evidence presented at Thomas's trial.

## C. Appellate Counsel

Thomas argues he received ineffective assistance of appellate counsel in that his counsel did not raise a claim that the evidence was insufficient to convict Thomas of felony murder. He argues the outcome of his appeal would have been different had his counsel raised an insufficiency claim because the State failed to present sufficient evidence that Thomas's conduct killed Hunt. More specifically, he contends Indiana Code section 1-1-4-3 (1986) defines death as (1) irreversible cessation of circulatory and respiratory functions; or (2) irreversible cessation of all functions of the entire brain,

10

including brain stem, and that no evidence was presented establishing that Hunt was dead as defined by this statute at the time she was removed from life support.

When reviewing a claim of insufficient evidence, this court considers only the probative evidence supporting the verdict and the reasonable inferences drawn therefrom. Boggs v. State, 928 N.E.2d 855, 864 (Ind. Ct. App. 2010), trans. denied. We do not reweigh the evidence or assess witness credibility, and we consider conflicting evidence most favorably to the trial court's ruling. Id. We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict, and it is not necessary that the evidence overcome every reasonable hypothesis of innocence. Id.

The cause of death is not an element of the offense of felony murder. See Ind. Code § 35-42-1-1 ("A person who: . . . (2) kills another human being while committing or attempting to commit . . . robbery . . . commits murder, a felony."); Wilson v. State, 432 N.E.2d 30, 33 (Ind. 1982) ("The cause of death is not an element of the offense [of murder] itself; the element in question is the killing, absent a suggestion of intervening cause."); Williams v. State, 782 N.E.2d 1039, 1047 (Ind. Ct. App. 2003) ("The cause of death is not an element of the offense of murder itself, but becomes a relevant matter when an intervening cause of death is suggested."), trans. denied. Thus, what Thomas is really arguing is that Hunt's removal from life support was an intervening cause of death. "An intervening cause is an independent force that breaks the causal connection between the actions of the defendant and the injury. . . . In order for an intervening cause to break the chain of criminal responsibility, it must be so extraordinary that it would be unfair to

hold the defendant responsible for the actual result." Spencer v. State, 660 N.E.2d 359, 362 (Ind. Ct. App. 1996).

Here, Orue testified that she drove with Thomas and Taylor to Gwendolyn Hunt's apartment. Orue knocked on the door, and Hunt began to open it. When Hunt saw that Orue was not alone, Hunt attempted to close the door, but Thomas forced the door open and entered the apartment. Orue stated that after going into the apartment for two to three minutes, Thomas returned to the entryway and shot Hunt in the head. Hunt did not die immediately, but died later at the hospital after being taken off life support. Dr. Joseph Prahlow, a forensic pathologist, testified regarding Hunt's cause of death. Dr. Prahlow testified that the bullet fired at Hunt went through her skull and brain. Dr. Prahlow stated:

> After going through the left occipital lobe, [the bullet] went through the deep central structures of the brain where the brain stem and spinal cord attach to the rest of the brain. Some very, very important structures in the deep part of the brain. . . . The fact that the deep structures in the brain were injured, however, makes . . . this gunshot immediately incapacitating at the very least. . . . The cause of death for Ms. Hunt was . . . a gunshot wound of the head.

Transcript at 422-24.

Based on our standard of review of sufficiency of the evidence claims, the outcome of Thomas's appeal would not have changed had his appellate counsel raised sufficiency of the evidence as an issue in his first appeal. The evidence most favorable to the trial court's verdict is that the gunshot wound was the cause of Hunt's death. The removal of life support is not an independent force so extraordinary as to break the causal connection between the gunshot and Hunt's death.

## III.  Due Process

Thomas next argues his due process rights were violated because the State failed to disclose the existence of an agreement with Orue in exchange for her testimony condemning Thomas.  As evidence of the alleged agreement, Thomas points to Orue's sentence, issued after Thomas's retrial, of forty-five years in prison, the lowest possible sentence for a conviction of felony murder.  See Ind. Code § 35-50-2-3(a).  "A prosecutor must disclose to the jury any agreement made with a witness and any promises, grants of immunity, or rewards offered in return for testimony."  Rubalcada v. State, 731 N.E.2d 1015, 1024 (Ind. 2000) (citations omitted).  "The prosecutor's duty of disclosure arises when there is a confirmed promise of leniency in exchange for his testimony" and a "witnesses's expectations, coupled with evidence of a deal after the in-court testimony of the witness, are insufficient to require that a disclosure be made."  Id. (citations omitted).

Here, when Orue testified, her immunity agreement with the State was disclosed to the jury.  When asked if she had any reason to think she would receive anything other than immunity in exchange for testifying, she replied that she did not.  The only evidence asserted by Thomas in support of his contention that an agreement was established is that Orue's sentence was the statutory minimum.  Nonetheless, her sentence was within the range allowed by statute.  Thus, without any other evidence supporting Thomas's claim, there was no confirmed promise of an agreement and the State's lack of disclosure of the alleged agreement did not violate Thomas's due process rights.

## Conclusion

The post-conviction court did not abuse its discretion in denying Thomas's motion to withdraw his petition for post-conviction relief.  Thomas has failed to establish that he

received ineffective assistance of trial or appellate counsel, and his due process rights were not violated at trial by the State's nondisclosure of an alleged leniency agreement with one of its witnesses. We therefore affirm the post-conviction court's denial of his motion to withdraw his petition and its denial of his petition for post-conviction relief.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.