

**FILED**

Jul 31 2013, 6:32 am

CLERK

of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BRUCE RYAN, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1211-CR-932 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49G02-1110-FC-77449

**July 31, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Bruce Ryan appeals his two convictions for class C felony sexual misconduct with a minor. He argues that the prosecutor improperly commented on his constitutional rights to a jury trial, improperly demeaned defense counsel, improperly urged the jury to convict him for reasons other than his guilt, and improperly commented on the truthfulness of the victim. Having failed to preserve his claims of error, he argues that the cumulative effect of the prosecutor's misconduct resulted in fundamental error requiring reversal of his convictions and remand for a new trial. We conclude that the prosecutor committed misconduct by suggesting to the jury that Ryan was having a jury trial to try to get away with his crime, by telling the jury that defense counsel made an argument that allows guilty people to go free and was a trick, by urging the jury to convict him "to send the message that we're not going to allow people to do this" and by telling the jury that the victim told the truth about what happened. We further conclude that the error resulting from this misconduct is fundamental, and therefore we reverse Ryan's convictions and remand for a new trial.

## Facts and Procedural History

The facts most favorable to the jury's verdict indicate that in the summer of 2011, forty-three-year-old Ryan was an eighth-grade physics teacher. He was married with two children. Fourteen-year-old Z.W-B. was a student at the school where Ryan taught.[1] She had been enrolled in the school since the sixth grade, had known Ryan since she was eleven years old, and had taken his eighth-grade physics class. Z.W-B. has Asperger's syndrome.

---

[1] She turned fifteen in the fall of 2011 and entered the ninth grade.

That summer, Z.W-B. attended Ryan's science club at the school. More often than not, she was the only student in attendance. Ryan and Z.W-B. began to email and chat online. They used Google Plus, a social networking site similar to Facebook, to send private messages to each other. They chatted online every night. Initially, the purpose of their chats was to discuss the science club, but the content became more personal.

Their relationship became romantic when Z.W-B. told Ryan untruthfully that her father abused her so that Ryan would like her and feel sorry for her. Tr. at 50. She told Ryan that she did not want the abuse to become public knowledge because her mother might hurt herself if she heard about the abuse. *Id*. at 74-75. Afterward, Ryan told her that he loved her, and she told him that she loved him.

Sometime late in the summer they kissed in the storeroom in the back of Ryan's classroom. During the late summer and into the fall, Ryan and Z.W-B. kissed at least ten times in the storeroom. They kissed eight times with open mouths and with their tongues. *Id*. at 80. When they kissed this way, the kisses felt sexual to Z.W-B., and she was sexually aroused. Some of these encounters occurred while school was in session. During this time, Ryan gave Z.W-B. jewelry, a t-shirt, trinkets, and toys. On Z.W-B.'s birthday, Ryan threw her a party in the storeroom with candles and ice cream, and they kissed open-mouthed. During their times in the storeroom, Ryan never touched her breasts or vagina, and she never touched his penis. All their contact was limited to hugging and kissing.

Also during this time, Ryan and Z.W-B.'s online chats became romantic. On September 4, 2011, Ryan wrote, "Miss you," and Z.W-B. responded, "I miss you

3

indescribably." State's Ex. 1 at 21. On September 13, 2011, Ryan wrote, "You are fantastic," and Z.W-B. wrote, "Thanks, love." *Id*. at 19. On September 16, 2011, Ryan sent Z.W-B. a message that ended with "I love you." *Id*. at 18. Z.W-B. responded, "[T]oday has been it's [sic] own lifetime. It was wonderful. Thank you. I love you." *Id*. at 19.

On October 8, 2011, Z.W-B. wrote, "I miss you. Thinking of you all the time," and Ryan wrote, "Miss you." *Id*. at 17. On October 16, 2011, Z.W-B. wrote, "See you in the morning. Love you. To pieces." *Id*. at 15. On October 18, 2011, Ryan wrote, "A lovely science club. Miss you. Thank you," and Z.W-B. wrote, "I miss you too." *Id*. at 14. On October 23, 2011, Ryan wrote, "Missing you. Feels horrible with the one way communication. Messages in bottles. In a weird way though it's like you're with me all the time. Think about you constantly." *Id*. at 10.

On October 28, 2011, Z.W-B. wrote,

> I don't feel like I'm helping at all. I've certainly not improved the situation between you and your wife. I keep you up late and away from your work. I make you risk everything all the time. Horrified that I will have to convince you that I'm really not worth it. Even more horrifying is that you may not need any convincing. Especially after yesterday's storeroom incident. You mean an awful awful lot to me. Maybe things will clear up later. Or something. I don't know. But I love you.

*Id*. at 9. Ryan responded,

> You've a tremendous positive impact on me. Can't imagine a life without you. You're helping me through a tough time. Trying to strike a difficult balance of as much time with you as possible without turning everyone against us. Friday was its own lifetime. I can't thank you enough. I am so privileged.

*Id*.

4

There were also messages in which Ryan discussed marital difficulties with his wife, his sex life with his wife, and his wife's physical appearance. Tr. at 49-50. Z.W-B. also sent messages expressing her desire to have sex with Ryan, but he declined, saying that he was afraid that they could get caught or that she would be hurt in some way. *Id*. at 52.

On October 29, 2011, Z.W-B.'s parents discovered her online communications with Ryan and notified the school and the police. The State charged Ryan with three counts of class C felony sexual misconduct with a minor, with Count I alleging that the misconduct occurred on or about or between October 10 to October 24, 2011, Count II alleging that the misconduct occurred on or about or between October 17 to October 21, 2011, and Count III alleging that the misconduct occurred on or about or between October 24 to 28, 2011.

A two-day jury trial was held. In her closing arguments, the prosecutor made the following relevant comments:

> The most important person here to evaluate their credibility is [Z.W-B.] And does she have a motive or a bias to lie? And yes, she has a huge motive [or] bias to lie and say that nothing happened. Because she loves him; for some unexplainable reason she loves him and she didn't want him to be caught. She hated that he was going to be caught. But she didn't, *she told you the truth. As uncomfortable and awkward as she was up there, she told you the truth of what happened.* And I'm not sure if she would have been strong enough or smart enough to tell the truth if it wouldn't have been for these [Google Plus pages]. And again, you will get the copy that I admitted when you go back to deliberate. Please re-read them, see the picture of her in her school girl uniform sleeping in his chair in his classroom, it's posted on her. Read the way that they communicate with each other and think about it. This is a prosecutor's dream I can tell you in these kinds of cases. Because the law that you may convict based on the word of the child alone is usually all that we have. We don't get DNA; we don't get injuries to children. We get a kid and we've got to put them up there and they've got to convince 12 to 14 grown adults. And it's always a he said, she said. Because these kinds of guys never want to admit it, why? Because they're the kinds that do it. So this is

5

awesome. Not that it happened, but that you get to see it. And remind yourself that this is a teacher. I love you, picturing you sleeping is a lovely image. We know what happens [to students] that have their teachers do this kind of stuff and prey upon them, we know now what happens. And it's what happened to her; in the sick crazy spiral that people like him put them in. *You should believe her, she is credible*, alone she makes the case. And you may convict him based just on her word. …. You need nothing else. But this just drives it home. …. Fit this into the innocent hole if you will please. Because it just doesn't go. *She has every reason to have lied and covered for him and she didn't.* …. You wonder at night what you can say to a jury to get them to get the bigger picture here. And no case is easy for you guys, I get that. No one want[s] to judge someone else or somebody else's actions. *But we keep hearing about this happening, whether it's a teacher, or a coach, or a pastor, whoever. And we all want to be really angry and post online and have strong opinions about it. And we never think that we'll be the ones that are here that get to stop it. And you actually do get to stop it.* And as much as I know you probably did not want to be here on Monday morning, I would submit to you that *you are in an incredible position to stop it and to send the message that we're not going to allow people to do this.* Those of who [sic] are good teachers are not going to allow grown men to prey upon their students and get away with it. *I want to be really clear, we are here because everyone has the right to have a jury trial. We're not here because he didn't do it, we're here because he wants to get away with it.* So don't let him, thank you.

*Id.* at 139-41 (emphases added).

In her rebuttal, the prosecutor stated,

I guess it's frustrating in these cases because *these kinds of arguments are how guilty people walk. And so, when you think about how people get away with it it's because defense attorneys do things like say well, it was a lousy investigation.* …. Saying that you can fit any of this into a reasonable theory of innocence is–I apologize, but it's ridiculous. So the first thing defense attorneys do in this case is they attack the quality of the investigation. …. Then what they do is they bring up cases of false accusations in the media, right? Whatever it is, the Penn State–or whichever other one–Duke; they bring up[. W]hy? To make you worry that somehow you're going to convict him and then it will turn out that it was all bogus. *That's [a] classic defense attorney trick.* …. *But that's what defense attorneys do as part of doing their job that they want to make you believe that maybe he did it and they just didn't charge the right dates.* …. *She's never been dishonest.* She spoke to her parents, she spoke to the principal, she spoke to Detective White, and she gave

6

a deposition. You better believe if there had been inconsistencies in any of her statements, [defense counsel] would have been down her throat about those when she testified. But he wasn't because there aren't any. …. And to make clear that [Z.W-B.] gets nothing out of this. She doesn't want him to get in trouble; she wants him to want to be with her. *And that's why what she told you was even more credible.* Because if she thought she could get away with covering for him again, she would. But the jig is up; we've seen the Google Plus postings. The jig is up. *She has to be honest now and she's done that.*

*Id*. at 151-54 (emphases added).

The jury acquitted Ryan of Count I and found him guilty of Counts II and III. Ryan appeals.

**Discussion and Decision**

Ryan contends that several of the prosecutor's statements during closing argument constitute misconduct, which cumulatively require reversal of his convictions. Generally, to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection but must also request an admonishment; if the admonishment is not given or is insufficient to cure the error, then the defendant must request a mistrial. *Neville v. State*, 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012), *trans. denied* (2013). Ryan acknowledges that he failed to properly preserve his claims.

> To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, the defendant must establish not only the grounds for the prosecutorial misconduct, but also the additional grounds for fundamental error. In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct.

Fundamental error is an extremely narrow exception to the contemporaneous objection rule that allows a defendant to avoid waiver of an issue. For a claim of prosecutorial misconduct to rise to the level of fundamental error, it must make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. The element of harm is not shown by the fact that a defendant was ultimately convicted. Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. The mere fact that an alleged error implicates constitutional issues does not establish that fundamental error has occurred.

*Nichols v. State*, 974 N.E.2d 531, 535 (Ind. Ct. App. 2012) (citations and quotation marks omitted).

Ryan asserts that the prosecutor improperly commented on his constitutional right to a jury trial, improperly disparaged defense counsel, improperly urged the jury to convict him for reasons other than his guilt, and improperly commented on Z.W-B.'s credibility. We address each in turn and then address their cumulative effect.

First, Ryan argues that the prosecutor improperly commented on his constitutional right to a jury trial when she stated, "I want to be really clear, we are here because everyone has the right to a have a jury trial. We're not here because he didn't do it, we're here because he wants to get away with it." Tr. at 141. A criminal defendant's right to a jury trial is guaranteed in both the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution. Our supreme court has stated that the right to a jury trial is "[a] fundamental linchpin of our system of criminal justice." *Kellems v. State*, 849 N.E.2d 1110, 1112 (Ind. 2006).

8

The State asserts that Indiana courts have not held that references to a defendant's constitutional right to a jury trial are prosecutorial misconduct, but Indiana courts have not previously been presented with this question. We have stated that, generally speaking, when a prosecutor "makes a statement in argument which directly or indirectly may be interpreted by the jury as a comment on the accused's exercise of his rights," she commits prosecutorial misconduct. *Dack v. State*, 479 N.E.2d 96, 97 (Ind. Ct. App. 1985), *trans. denied* (1986). Specifically, courts have found that prosecutorial comments in reference to two constitutional rights constitute misconduct: the right against self-incrimination and the right to be represented by counsel. The reasoning supporting these determinations is helpful to our analysis here.

We have held that a defendant's Fifth Amendment privilege against self-incrimination is violated and a prosecutor commits misconduct when she makes a statement that "'is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence.'" *Owens v. State*, 937 N.E.2d 880, 893 (Ind. Ct. App. 2010) (quoting *Ziebell v. State*, 788 N.E.2d 902, 913 (Ind. Ct. App. 2003)), *trans. denied* (2011). The basis for this principle is that "comment on the refusal to testify amounts to a penalty imposed by courts for exercising a constitutional privilege and that to allow such comment would impinge on the privilege against self-incrimination by making its assertion costly." *Id.* at 886 (citing *Griffin v. California*, 380 U.S. 609, 614 (1965)). In addition, the federal courts have held that a defendant's Sixth Amendment right to counsel was violated when the prosecutor suggested that the accused's phone call to his attorney after his arrest indicated

9

guilt. *Zemina v. Solem*, 438 F. Supp. 455, 466 (S.D.S.D. 1977), *adopted by* 573 F.2d 1027 (8th Cir. 1978). The reasons for this decision were that "comment on a defendant's exercise of his right to counsel could make that exercise costly," and "the prosecution should not be allowed to imply that only guilty people contact their attorneys." *Id*. *See also United States ex rel. Macon v. Yeager*, 476 F.2d 613, 616-17 (3rd Cir. 1973) (holding that prosecutor's comment regarding the accused's call to his counsel the day after the shooting was directed to and may have had the effect of raising in the jurors' mind that the accused was guilty and that such an inference might tend to cause the jury to disbelieve the accused's version of the story), *cert. denied*.

The reasoning prohibiting a prosecutor from commenting on a defendant's exercise of the Fifth Amendment right to remain silent and the Sixth Amendment right to counsel applies equally to a defendant's right to a jury trial. That is, comment on a defendant's exercise of the right to jury trial impinges upon that right by making its assertion costly, and the prosecution should not be allowed to imply that only guilty people exercise their right to a jury trial. Accordingly, we conclude that if a prosecutor's comment can fairly be said to penalize the defendant's exercise of the right to a jury trial, such a comment constitutes prosecutorial misconduct.

Here, the prosecutor stated, "We're not here because he didn't do it, we're here because he wants to get away with it." Tr. at 141. Ryan contends that the prosecutor's comment penalized the exercise of his right to a jury trial "by implying [that] jury trials are only for guilty people who were trying to get away with their crimes." Appellant's Br. at 8

10

(quotation marks omitted).[2] He argues that the comment undermined how jurors viewed the entire jury trial process. The State argues that the prosecutor's statement was not misconduct because it "invited the jury to make an inference of guilt from the evidence at trial, not from the exercise of a constitutionally protected right." Appellee's Br. at 9.

We fail to see how the prosecutor's comment can be construed as an invitation to the jury to convict Ryan based on the evidence that was presented. Rather, it is obvious that the prosecutor's comment suggested to the jury that Ryan chose to have a jury trial because he wanted to try to get away with his crimes. By suggesting that Ryan's decision to exercise his right to a jury trial indicated that he was guilty, the comment impermissibly penalized Ryan's constitutional right to a jury trial by making its exercise costly. Accordingly, we conclude

---

[2] Ryan cites *State v. Snow*, 144 P.3d 729 (Kan. 2006), *disapproved of on other grounds by State v. Guder*, 267 P.3d 751 (2012). In *Snow*, the prosecutor in closing argument stated,

> Members of the jury, there may be some of you who are sitting there thinking, why have we given two days to listen to this evidence? And the answer is simply this: Everyone who's charged with a crime in this country has an absolute right to a jury trial if that's what they demand. The defendant has indicated he wants a jury trial, and now he's had it. Despite the amount of evidence that might be there against them, if he wants it, I have to put it on, and we've done that.

*Id*. at 740 (quotation marks omitted). The prosecutor also stated, "Now, the defendant wants his jury trial, he's had his jury trial, and its [sic] time to put an end to this nonsense." *Id*. (quotation marks omitted).

The *Snow* court concluded that the prosecutor's comments were improper because they "injected a matter outside the evidence, inferring that Snow should have acceded to the State's evidence and waived his right to a fair trial because of the strength of the State's evidence against him," and that "the prosecutor's comment in this case disparages the juror's civic duty by calling the trial 'nonsense.' We believe that these comments demonstrate ill will toward Snow by implying that he had wasted the prosecutor's and the jury's time because he exercised his Constitutional rights." *Id*. at 741. Although the *Snow* court did not consider whether the prosecutor's comments penalized the defendant's exercise of his constitutional right to jury trial, *Snow* reveals an additional rationale for concluding that comments on a defendant's right to a jury trial are misconduct, namely that such comments inject a matter outside the evidence "which may induce the jury to decide the case on reliance on matters outside the evidence." *Lopez v. State*, 527 N.E.2d 1119, 1126 (Ind. 1988).

11

that the comment violated Ryan's right to a jury trial and therefore constituted prosecutorial misconduct.

Second, Ryan argues that the prosecutor improperly disparaged defense counsel with the following comments:

> I guess it's frustrating in these cases because *these kinds of arguments are how guilty people walk. And so, when you think about how people get away with it it's because defense attorneys do things like say well, it was a lousy investigation. ….* Then what they do is they bring up cases of false accusations in the media, right? Whatever it is, the Penn State–or whichever other one–Duke; they bring up[. W]hy? To make you worry that somehow you're going to convict him and then it will turn out that it was all bogus. *That's [a] classic defense attorney trick. …. But that's what defense attorneys do as part of doing their job that they want to make you believe that maybe he did it and they just didn't charge the right dates.*

Tr. at 151-52, 154 (emphases added).

The prosecutor must confine closing argument to comments based only upon the evidence presented in the record. *Lambert v. State*, 743 N.E.2d 719, 734 (Ind. 2001). Lawyers are required to "demonstrate respect for the legal system and for those who serve it, including ... other lawyers." *Marcum v. State*, 725 N.E.2d 852, 858 (Ind. 2000) (citing Preamble, Ind. Professional Conduct Rules). "[C]omments that demean opposing counsel, especially in front of a jury, are inappropriate." *Id*. at 859.

The State argues that the prosecutor's comments were not improper because they were comments "on the style and effect of the argumentation, not on opposing counsel's character." Appellee's Br. at 12. We disagree. In *Marcum*, the prosecutor stated that defense counsel was trying to "mislead this jury." *Marcum*, 725 N.E.2d at 859. The *Marcum* court concluded that "[t]his comment attacks the integrity of defense counsel by suggesting

12

that he is trying to mislead the jury" and was improper. *Id.*[3] Likewise, here the prosecutor's comments that defense counsel presented arguments that allowed guilty people to go free and that defense counsel's argument was a trick suggest that defense counsel is deceptive and therefore cannot be trusted. *Cf. Ramsey v. State*, 853 N.E.2d 491, 501 (Ind. Ct. App. 2006) ("[T]he State's comment here was directed at the quality of Ramsey's defense, not personally at Ramsey's counsel, because the State argued that the strategy of the defense was to attack the State's witnesses because of the strength of the State's case."), *trans. denied.*

In addition, the prosecutor did not just demean this particular defense counsel by saying that he employed deceptive practices. The prosecutor suggested that all defense attorneys used the same deceptive tactics. In so doing, the prosecutor suggested that the role of the defense was simply to make arguments that allow guilty people to go free. This disparages our entire jury system and undermines the defense role in protecting the defendant's rights and insuring that a guilty verdict is reached by due process of law and is founded upon legal evidence.

We found statements of similar content and effect improper in *Bardonner v. State*, 587 N.E.2d 1353 (Ind. Ct. App. 1992), *trans. denied.* During voir dire, the prosecutor told prospective jurors that both sides in a criminal case do not have an obligation to seek the

---

[3] The State also asserts that the prosecutor's statement "[t]hat's [a] classic defense attorney trick" was made in response to defense counsel's use of false accusation cases in his closing argument. Defense counsel argued that an alternative explanation for the case was that nothing happened between Ryan and Z.W-B. and that there were cases of false accusations such as the Duke lacrosse case. Tr. at 142. Even though defense counsel made that argument, it does not excuse the prosecutor from referring to the argument as a trick. *See Marcum*, 725 N.E.2d at 859 (stating that "there is no reason to suggest that defense counsel's contrary view was an attempt to mislead the jury").

13

truth and that defense counsel's duties had little relation to the search for truth.  The

*Bardonner* court explained why the comments were improper:

> Criminal defense counsel are no different than civil defense counsel with respect to the search for "truth" in that, in a civil case, when the plaintiff fails to present evidence on a material element, it is defense counsel's duty to ask for a judgment in his client's favor.  Civil defense counsel has no obligation to volunteer evidence to prove the plaintiff's case, and neither does defense counsel when the prosecutor fails to present evidence of defendant's guilt with respect to all elements of a crime.
>
> The only purpose for the prosecutor's comments on the respective roles of defense and prosecution is to prejudice the jurors into viewing the prosecutor as a "good guy" and the defense counsel as a "bad guy."  We think this is an unfair tactic which not only negates the defendant's presumption of innocence, but also runs afoul of Ind. Prof. Conduct Rule 3.4, which requires fairness to opposing party and counsel, and prohibits an attorney from alluding to matters that the lawyer does not reasonably believe are relevant or will not be supported by the facts in issue.  Here, the issue before the jury was whether the evidence was sufficient to convict the defendant of the crimes beyond a reasonable doubt.  It is not the jurors' responsibility to make a finding as to the role of the prosecutor and defense counsel or to determine the character of the defense counsel.  This information is certainly not relevant to the case.

*Id*. at 1361.

In the case at bar, the prosecutor's comments demeaned defense counsel, the role of

defense counsel, and our system of justice, and therefore we conclude that they were

improper and constitute prosecutorial misconduct.

Third, Ryan contends that the prosecutor engaged in misconduct when she asked the

jury to send a message with their verdict.  The prosecutor stated,

> You wonder at night what you can say to a jury to get them to get the bigger picture here.  And no case is easy for you guys, I get that.  No one want[s] to judge someone else or somebody else's actions.  *But we keep hearing about this happening, whether it's a teacher, or a coach, or a pastor, whoever.  And we all want to be really angry and post online and have strong opinions about*

14

*it.  And we never think that we'll be the ones that are here that get to stop it.  And you actually do get to stop it.*  And as much as I know you probably did not want to be here on Monday morning, I would submit to you that *you are in an incredible position to stop it and to send the message that we're not going to allow people to do this.*  Those of who [sic] are good teachers are not going to allow grown men to prey upon their students and get away with it.

Tr. at 140-41 (emphases added).

"[I]t is misconduct for a prosecutor to request the jury to convict a defendant for any reason other than his guilt or to phrase final argument in a manner calculated to inflame the passions or prejudice of the jury." *Neville*, 976 N.E.2d at 1264 (citation and quotation marks omitted).  Ryan contends that urging the jury to send a message invited the jury to convict him based on their anger regarding multiple similar cases that they have heard about rather than on the evidence presented at trial.  The State argues that "the prosecutor simply informed the jury that they were in a position to 'stop' sexual misconduct in this particular circumstance, which would send a message that people cannot get away with sexual misconduct." Appellee's Br. at 14.

In *Maldonado v. State*, 265 Ind. 492, 355 N.E.2d 843 (1976), the prosecutor argued to the jury that "this may be the most important thing you'll ever do for your community."  Our supreme court observed,

The phrase 'This may be the most important thing you'll ever do for your community' is ambiguous.  It could refer to the importance of the jurors' service on a jury, urging them to consider the gravity of their duty; conversely it could be understood to mean that the conviction of Maldonado would be a community service. A prosecutor may not engage in argument which lends itself to such understanding

*Id*. at 500-01, 355 N.E.2d at 849.

15

In *Impson v. State*, 721 N.E.2d 1275 (Ind. Ct. App. 2000), the prosecutor argued that "it's very appropriate that this month is Domestic Violence Awareness Month and that you had the opportunity to listen to this case this month" and "I ask you to go back and end this month of Domestic Awareness and do the right thing." *Id*. at 1283 (citation and quotation marks omitted). In analyzing the propriety of the statement "do the right thing," the *Impson* court reasoned,

> Here the prosecutor's statements are ambiguous. The last statement was preceded by a recitation of the evidence, and within that context, the statement could refer to the importance of the jury to "do the right thing" by considering all of the evidence. This would be a proper statement. Conversely, the statements could refer to the importance of the jury to "do the right thing" by capping off "Domestic Violence Awareness Month" with a conviction. This would be an improper statement.

*Id*.

Here, the prosecutor's "send the message" statement is open to more than one interpretation. The prosecutor preceded that statement by telling the jurors that she knew that they probably did not want to be in that courtroom on Monday morning, but by being there they were in a position to stop sexual misconduct. That statement puts the focus on this particular case. Thus, the prosecutor's "send the message" comment could be interpreted as informing the larger community that justice was served in this particular case. However, the prosecutor also talked about getting the jurors to see "the bigger picture," mentioned instances of other cases concerning teachers, coaches, and pastors, and said "we're not going to allow *people* to do this." Tr. at 140-41. In this context, the prosecutor suggested that sexual misconduct is a widespread societal crises and her comment to "send the message"

16

appears to be an exhortation to convict Ryan to stop other instances of sexual misconduct. Because the comment can be interpreted in this manner, it is improper and constitutes misconduct.[4]

Finally, Ryan asserts that the prosecutor committed misconduct by impermissibly vouching for Z.W-B.'s credibility. In closing argument, the prosecutor stated,

> The most important person here to evaluate their credibility is [Z.W-B.] And does she have a motive or a bias to lie? And yes, she has a huge motive [or] bias to lie and say that nothing happened. Because she loves him; for some unexplainable reason she loves him and she didn't want him to be caught. She hated that he was going to be caught. But she didn't, *she told you the truth. As uncomfortable and awkward as she was up there, she told you the truth of what happened. …. You should believe her, she is credible*, alone she makes this case. …. *She has every reason to have lied and covered for him and she didn't*.

*Id*. at 139-140 (emphasis added). And in rebuttal, the prosecutor said,

> *[Z.W-B.'s] never been dishonest*. …. And to make clear that she gets nothing out of this. She doesn't want him to get in trouble; she wants him to want to be with her. And *that's why what she told you was even more credible*. Because if she thought she could get away with covering for him again, she would. But the jig is up; we've seen the Google Plus postings. The jig is up. *She has to be honest now and she's done that.*

*Id*. at 153-54 (emphases added).

"[A] prosecutor may not state his or her personal opinion regarding the credibility of a witness during trial." *Thomas v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012), *trans. denied*.

---

[4] Although neither the *Maldonado* court nor the *Impson* court found that the prosecutor's statements subjected the defendant to grave peril and thus did not require reversal of the defendant's conviction, we will consider the prejudice arising from these comments when we assess whether the cumulative effect of the prosecutor's misconduct rises to fundamental error.

17

However, "a prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence." *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006) (citation and quotation marks omitted).

In *Gaby v. State*, 949 N.E.2d 870, 881 (Ind. Ct. App. 2011), another panel of this Court concluded that the prosecutor improperly vouched for the victim's credibility. There, the prosecutor stated "that she was confident that the jury would come to the same conclusion that she and the police detectives had come to," "I cannot and would not bring charges that I believe were false," and "I can tell you that with a guilty verdict on this case I will be able to sleep fine tonight. Just fine. In fact, better than fine. You will be able to also." *Id.* at 880 (citations and quotation marks omitted). Likewise, in *Lainhart v. State*, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009), this Court concluded that the prosecutor's remarks constituted improper vouching. The prosecutor told the jury during voir dire that "it would take an awful lot to get an officer [to lie]" and that "there's no place for it in our society." *Id.* at 937 (citation omitted). Then in closing argument the prosecutor said, "if any officer would even come close to not putting out exactly what happened telling the truth, they're out. I would never, ever, put them in front of a Jury, if I suspected anything." *Id.* at 937-38 (citation omitted). Also in *Schlomer v. State*, 580 N.E.2d 950, 957 (Ind. 1991), our supreme court concluded that the prosecutor improperly vouched for a witness when he stated, "I believe Detective McGee when he tell[s] us what happened."

In *Thomas*, however, another panel of this Court concluded that the prosecutor did not engage in improper vouching. 965 N.E.2d at 77. There, the prosecutor specifically stated

18

that he wanted to discuss why the State believed that the witnesses were credible. The prosecutor explained "that neighbors who testified were innocent bystanders who just happened to live above Hunt, that the testifying police officers' interests were in seeing the crime get solved correctly, and that, even though defense counsel cross-examined each witness and attempted to reveal issues of credibility, no such issues arose." *Id.* The *Thomas* court concluded that "the prosecutor's statements were comments regarding witness credibility based on the evidence presented at Thomas's trial." *Id.*

In comparing the prosecutor's remarks in this case with those of the prosecutors in the above cases, we conclude that some, but not all, of the prosecutor's comments were improper vouching. Earlier in closing, the prosecutor mentioned that the jury could assess witness credibility through observation of the witness and by considering whether the witness had any interest, bias, prejudice, or reason to lie at trial. Tr. at 134. This statement conformed with preliminary instruction number 12. Appellant's App. at 92. With regard to Z.W-B., the prosecutor's remarks that she loved Ryan and had a reason to lie to protect him were supported by the Google Plus pages, and therefore the prosecutor's statements that Z.W-B. was credible were proper. However, the prosecutor's unqualified assertions that Z.W-B. told the truth of what happened went too far because there was no evidence that Ryan kissed her other than Z.W-B.'s own testimony. *Cf. Neville v. State*, 976 N.E.2d at 1261 (concluding that prosecutor did not improperly vouch for witness by arguing that witness told the truth because the statement was supported by photographs that confirmed that the witness could see the crime scene as she had testified). Therefore, the prosecutor committed misconduct by

telling the jury that Z.W-B. told the truth of what happened. As to the prosecutor's remark that Z.W-B.'s "never been dishonest," the State contends that the prosecutor was only talking about Z.W-B.'s statements to her parents, the school, the police, and the court. Although the evidence supports that Z.W-B.'s statements to her parents, the school, the police, and the court were consistent, the prosecutor's remark is all-encompassing, and the State acknowledges that Z.W-B. testified that she lied to Ryan when she told him her father was abusing her in order to make Ryan like her. The statement that Z.W-B.'s "never been dishonest" is overly broad and is therefore is an improper comment on her credibility.

We now address Ryan's contention that the prosecutor's improper comments cumulatively resulted in fundamental error requiring reversal and a new trial. Ryan cites *Lainhart*, in which "the State improperly distinguished the roles of prosecution and defense, referred to the penal consequences of the offense charged, commented on [defense counsel's] failure to call corroborating witnesses, and personally vouched for Officer Roberts's credibility." *Lainhart*, 916 N.E.2d at 938. In concluding that the cumulative effect of the prosecutor's misconduct constituted fundamental error, the *Lainhart* court reasoned,

> Although each instance of prosecutorial misconduct alone may not have constituted reversible error, we are persuaded that the cumulative effect of the State's misconduct was to make a fair trial impossible. This case involved conflicting testimony and hinged almost exclusively on the credibility of the witnesses. …. Because this case involved so much competing testimony, and because most of the State's misconduct went straight to the credibility of the witnesses, we cannot say that the State's misconduct was harmless. The jury may have accepted [Lainhart's] version of events if the State had not improperly distinguished the roles of defense and prosecution, personally vouched for Officer Roberts, and commented on [Lainhart's] failure to call additional witnesses in his favor.

20

*Id*. at 938-39.

The State asserts that *Lainhart* is not controlling because here the testimony was not conflicting and most of the misconduct did not pertain to the credibility of witnesses. Whether fundamental error occurred here does not depend on whether this case is like *Lainhart* but rather depends on the particular types of misconduct committed and the evidence presented by the State in this case.

We have concluded that the prosecutor improperly commented on Ryan's constitutional right to a jury trial; improperly disparaged defense counsel, the role of defense counsel, and our system of justice; improperly urged the jury to convict Ryan for reasons other than his guilt; and improperly vouched for Z.W-B.'s truthfulness. The State argues that no fundamental error occurred because the evidence of sexual misconduct was overwhelming and demonstrates that the results would have been the same without the prosecutor's comments. We are unpersuaded.

To convict Ryan of class C sexual misconduct with a minor, the State had to prove beyond a reasonable doubt that Ryan performed or submitted to fondling or touching of Z.W-B. with the intent to arouse or satisfy the sexual desires of Z.W-B. or Ryan. Ind. Code § 35-42-4-9. To that end, the State sought to prove that Ryan and Z.W-B. kissed with the intent to arouse or satisfy his or her sexual desires. Our review of the record reveals that the only evidence that Ryan kissed Z.W-B. to arouse or satisfy his or her sexual desires is Z.W-B.'s testimony. Her credibility is essential to the State's case against Ryan. The Google Plus pages, the gifts, and Z.W-B.'s suicidal despair after her parents terminated all communication

with Ryan may suggest that she and Ryan had a relationship that is consistent with and lends credibility to Z.W.-B.'s testimony, but they do not provide independent evidence that she and Ryan kissed in order to arouse or satisfy their sexual desires. The prosecutor improperly told the jury that defense counsel employed a "classic defense trick," demeaning the role of defense counsel and our system of justice. Tr. at 152. We have stated that "the jurors' estimates of the truthfulness of a witness or analysis of the evidence could be affected by the manner in which they perceive the role of defense counsel." *Bardonner*, 587 N.E.2d at 1361. In addition, the jury's assessment of Z.W-B.'s credibility would have been affected by the prosecutor's improper declaration that Z.W-B. "told you the truth of what happened" and "has never been dishonest." Tr. at 139, 153. Also, significantly, Ryan's exercise of his constitutional right to a jury trial was penalized when the prosecutor stated to the jury that Ryan chose to have a jury trial to try to get away with his crime.[5] Finally, the prosecutor went beyond the evidence and improperly urged the jury to convict Ryan "to send the message that we're not going to allow people to do this." *Id*. at 141. Together the cumulative effects of

---

[5] Ryan urges us to apply the constitutional harmless error standard to the prosecutor's infringement of his constitutional rights to a jury trial, that is, that the error was harmless beyond a reasonable doubt. Although other panels of this Court have applied this standard in addition to a fundamental error analysis when the defendant failed to preserve the error, *see Sobolewski v. State*, 889 N.E.2d 849, 857 (Ind. Ct. App. 2008), *trans. denied*. and *Herron v. State*, 801 N.E.2d 761, 766 (Ind. Ct. App. 2004), our supreme court has stated that the "mere fact that an alleged error implicates constitutional issues does not establish that fundamental error has occurred." *Baird v. State*, 688 N.E.2d 911, 917 (Ind. 1997); *Wilson v. State*, 514 N.E.2d 282, 284 (Ind. 1987), *cert. denied* (1998).

22

the prosecutor's improprieties deprived Ryan of a fair trial.[6]  Accordingly we reverse his two convictions for class C felony sexual misconduct with a minor and remand for a new trial.

Reversed and remanded.

ROBB, C.J., and FRIEDLANDER, J., concur.

---

[6] Another panel of this Court recently issued a memorandum decision in which the defendant claimed that prosecutorial misconduct resulted in reversible error. *Spiegel v. State*, No. 49A02-1208-CR-687 (Ind. Ct. App. Apr. 18, 2013). The *Spiegel* court concluded that the prosecutor improperly expressed her personal opinion as to the credibility of a witness, improperly inflamed the passions or prejudices of the jury, improperly commented on the possible penal consequences of conviction, and improperly highlighted the disparate roles of the prosecution and defense.  Nevertheless, the *Spiegel* court concluded that reversal was not warranted because as to the first instance of misconduct the evidence of guilt was abundant and therefore Spiegel was not subjected to grave peril, and as to the other three instances Spiegel waived his fundamental error claims.  In his concurring opinion, Judge Friedlander observed that despite admonishment from this Court, "instances of condemnable prosecutorial behavior continue to come before us on appeal.  It would seem that our admonishments are falling on deaf ears on an all-too-regular basis." *Id*., slip op at * 7.  This case demonstrates the unfortunate result of the failure to heed our admonishments; namely, prosecutorial misconduct that requires reversal.