# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**SUSAN D. RAYL**
Smith Rayl Law Office, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDON BRUMMETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1304-CR-378 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
Cause No. 49G02-1206-FB-42411

**June 2, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Brandon Brummett asks this Court to reverse his convictions for Child Molesting[1] as a class B felony, Child Molesting[2] as a class C felony, and three counts of Sexual Misconduct with a Minor,[3] class D felonies. More particularly, Brummett argues that prosecutorial misconduct placed him in grave peril and amounted to fundamental error. Additionally, Brummett argues that the testimony of K.A. was incredibly dubious and, therefore, there was insufficient evidence to support one of his convictions for sexual misconduct with a minor. Finally, Brummett contends that the trial court committed fundamental error when it admitted evidence that Brummett touched A.A. in other states on family vacations. We conclude that the prosecutor's continued misconduct did constitute fundamental error that placed Brummett in grave peril. Therefore, we reverse and remand for a new trial.

## FACTS[4]

Brummett, aged twenty-three at the time of the trial, is the cousin of K.A., aged sixteen at the time of the trial, and A.A., aged fourteen at the time of the trial. The girls' father, Brummett's uncle, was incarcerated in West Virginia. Although the girls' mother, Iva Desonier, was divorced from their father, she encouraged the girls to spend time with their relations on their father's side.

---

[1] Ind. Code § 35-42-4-3(a).

[2] I.C. § 35-42-4-3(b).

[3] I.C. § 35-42-4-9(b).

[4] We heard oral argument on April 2, 2014 at Vincennes University. We would like to thank the University's administration, faculty, and students for their hospitality. We also thank counsel for their informative and illustrative oral advocacy.

K.A. told Brandon Clem, whom she dated from February 2012 until February 2013, that Brummett had been molesting her since she was nine years old. Clem convinced K.A. that she needed to tell Desonier. On March 20, 2012, Clem met with K.A. and Desonier. When K.A. tried to tell Desonier about Brummett, she became upset and had trouble speaking, so Clem told Desonier what K.A. had told him concerning Brummett. Desonier telephoned the penitentiary where the girls' father was located and had to explain the situation to a counselor before Father could return her call. When A.A. returned home from school that day, Desonier asked her if Brummett had ever touched her inappropriately. A.A. told Desonier that he had.

On June 21, 2012, the State charged Brummett with Count I, class B felony child molesting, Count II, class C felony child molesting, Count III, class D felony sexual misconduct with a minor, Count IV, class D felony sexual misconduct with a minor, and Count V, class D felony sexual misconduct with a minor. Brummett's jury trial began on March 4, 2013.

At the trial, K.A. testified that when she was nine or ten years old, Brummett touched the inside of her vagina underneath her clothes at their Grandmother's house. She also testified that, on another occasion, Brummett touched her vagina over her clothes at her Grandmother's house. K.A. stated that when she was fourteen, Brummett touched her vagina over her clothing at her Aunt Tena's house, and that in January 2012, Brummett touched her outside of her clothing at her Grandmother's house.

3

K.A. testified that, when Brummett touched her in January 2012, they were at Aunt Tammy's house. She, Aunt Tammy, Aunt Tena, her Grandmother, A.A., and Brummett were all playing Phase Ten at the kitchen table. She testified that, during the card game while they were all seated at the table, Brummett put his leg over hers and forced her legs apart, unzipped her jeans, and put his hand on her vagina over her panties for ten minutes. She further testified that while this happened, she would move her chair away from Brummett and he would move his towards her.

A.A. testified that Brummett began touching her when she was eight or nine years old. She testified that she was at her Grandmother's home, sleeping on the couch while Brummett slept on the floor. She further testified that he reached up and touched her on top of her clothing but did not say where he touched her. A.A. also testified that Brummett touched her inside her privates. She testified that another incident occurred at her Grandmother's house when she was eight or nine, during which Brummett touched her vagina outside her clothing for five minutes. She also testified that the last time something had happened was when they had been in West Virginia visiting her Father.

Brummett's jury trial concluded on March, 5, 2013; the jury found Brummett guilty on all charges. On April 3, 2013, the trial court imposed the following sentences, to be served concurrently: ten years imprisonment with three years suspended on Count I; four years imprisonment for Count II, and 545 days imprisonment on Counts III through IV.

Brummett now appeals.

4

## DISCUSSION AND DECISION

### I. Prosecutorial Misconduct

Brummett contends that the prosecutor engaged in misconduct that placed him in grave peril and rendered a fair trial impossible. Although Brummett did not object to the misconduct at trial, he argues that the repeated instances of misconduct resulted in fundamental error. [5]

When reviewing a claim of prosecutorial misconduct, we will first determine whether the prosecutor engaged in misconduct. Carter v. State, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011). If this Court finds that there has been misconduct, we then determine "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected." Id. The gravity of the peril is not measured by the degree of impropriety of the conduct but, rather, by the probable persuasive effect of the misconduct on the jury's decision. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). In order to preserve a claim of prosecutorial misconduct, the defendant must both object to the alleged misconduct and request an admonishment and move for a mistrial. Cowan v. State, 783 N.E.2d 1270, 1277 (Ind. Ct. App. 2003).

Brummett did not object to the misconduct at trial and, therefore, did not properly preserve his claim. Thus, his argument is waived unless he establishes both the grounds for prosecutorial misconduct as well as the grounds for fundamental error. Booher, 773

---

[5] We note that the circumstances in this case in regard to prosecutorial misconduct are similar to those in Ryan v. State. 992 N.E.2d 776 (Ind. Ct. App. 2013), trans. granted. The prosecutor in this case also prosecuted the defendant in Ryan.

N.E.2d at 818. Fundamental error is a "substantial, blatant violation of due process" so prejudicial to the rights of the defendant that it renders a fair trial impossible. Hall v. State, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010).

A. Comments Regarding Defense Counsel and Defense Lawyers Generally

Brummett argues that, during its closing argument, the State made three statements that were disparaging of Brummett's defense counsel and the role of defense counsel in general. First, Brummett contends the State promoted a "good guy/bad guy" theme throughout its closing argument when it stated:

> First, I'd like to start as I typically always have to do ah, at this point in a trial and apologize for any rude um, facial expressions I might have made or um, If you thought I got to [sic] angry or to [sic] upset at times I do apologize it's just in my um, nature and I trust that if it was a child that any of you loved having to come into this courtroom you would appreciate um, that same conviction or anger, call it whatever you want, coming out of the State if it was your kid coming on the stand.
> * * *
> . . . when [the defense attorney] says that it's, it's an empty case or it's a hollow case or it falls short, that's frustrating because we do tell our kids to come forward and tell. And then time and time and time again they do and this is what happens. We tell them to tell us if you're touched, tell us immediately. Come and tell us, we'll keep you safe. We'll protect you. The prosecutors, the police will do things for you but we don't explain to them that all of this will happen. That they'll come and have to speak to you strangers. That there will be people in the back of the courtroom. That they'll have to answer questions for a defense attorney. We don't teach them that what that all entails and then when they're strong enough to do it, when they have the courage or what have you, whatever you want to call it, to do it, then we do this and we say it's not enough. It's not good enough. You coming in and telling the truth when you couldn't possibly give us anymore isn't enough and that's empty and that's hollow and that falls short. And if that's the case and if that's what we're gonna [sic] say in this county then we should start telling our kids not to come forward anymore.
> * * *

6

If it was [sic] my job to pull the wool over you guy's [sic] eyes I wouldn't be here number one and number two, the State wouldn't have been honest about bad facts like Dad being in prison.

Tr. p. 207-8, 208-9, 211.

Additionally, Brummett contends the State's comment below, also made during closing argument, "impl[ies] that because of what defense counsel did in this case, and in child molest cases generally, child molesters 'get away with' their crimes[.]" Appellant's Br. p. 13.

We see these cases on the news and I think all of us think how do these guys get away with that. Or we see them on a Dateline or a whatever and think how do they get away with this. Again, this is how they get away with it. Because this process is hard. It's hard for kids. But this is what they do and it comes down to little things. Little things like I don't know if any of you noticed when [defense attorney] was questioning the girls he stayed at his table. Why, so that they would have to look at him. They have to look right at him. But he questioned his client he was right over there. Why, so that Mr. Brummett is looking at you guys. That's why. How do you make a fourteen or sixteen year old girl even more uncomfortable to talk about her vagina, well you make her look at the guy who touched it.

Tr. at 209-10. Finally, Brummett claims the State attacked defense counsel's integrity when it stated, during closing argument:

[Brummett] knew in March they were accusing him. And in those months he couldn't come up with anything. But once he hired an attorney and they were able to kind of talk things through all of a sudden it's this money issue which doesn't make any since [sic] anyways and is frankly insulting to that that [sic] is what this would all be about.

Id. at 213.

The prosecutor is required to confine her closing argument to comments based upon the evidence presented in the record. Lambert v. State, 743 N.E.2d 719, 734 (Ind. 2001). In general, lawyers are required to demonstrate respect for the legal system, as well as other lawyers; "comments that demean opposing counsel, especially in front of a jury, are inappropriate." Marcum v. State, 725 N.E.2d 852, 858-859 (Ind. 2002). In Marcum, this Court found that comments by the prosecutor stating that the defense counsel was trying to "mislead the jury," were attacks on the character of defense counsel and improper. Id. at 859.

The State asserts that the prosecutor's comments "remained within the realm of professionalism and appropriate comment on the law and the facts of the case." Appellee's Br. p. 7. We disagree. Here, the prosecutor made comments that implied that defense counsel's arguments helped guilty men go free. Tr. p. 209-210. Further, she stated that defense counsel employed tricks, such as sitting at his table while questioning the girls. Id. Moreover, when the prosecutor stated, "I trust that if it was a child that any of you loved having to come into this courtroom you would appreciate um, that same conviction or anger, call it whatever you want, coming out of the State if it was your kid coming on the stand," she took the jury out of the jury box and asked them to focus on irrelevant and improper considerations. Id. at 207-208.

Additionally, the prosecutor accused the defense counsel of collaborating with Brummett to falsify information: "And in those months he couldn't come up with anything. But once he hired an attorney and they were able to kind of talk things through

all of a sudden it's this money issue." Id. at 2123.  This is a clear suggestion that defense counsel helped Brummett to fabricate information to provide the jury.

Here, the prosecutor not only impugned the integrity of defense counsel but also suggested that the role of defense lawyers was to help guilty men go free.  Id.  We agree with Brummett that the prosecutor attempted to create a good guy/bad guy dichotomy that portrayed defense counsel as the "bad guy."  In Bardonner v. State, this Court held such conduct to be inappropriate, stating that,

> We think this is an unfair tactic which not only negates the defendant's presumption of innocence, but also runs afoul of IN. Prof. Conduct Rule 3.4, which requires fairness to opposing party and counsel, and prohibits an attorney from alluding to matters that the lawyer does not reasonably believe are relevant or will not be supported by the facts in issue. . . It is not the jurors' responsibility to make a finding as to the role of the prosecutor and defense counsel or to determine the character of the defense counsel. This information is certainly not relevant to the case.

587 N.E.2d 1353, 1361 (Ind. Ct. App. 1982).

We conclude that the prosecutor's comments impugned the integrity of defense counsel and demeaned the role of defense counsel in this case. Therefore, we determine that the prosecutor's improper comments concerning defense counsel constituted prosecutorial misconduct.

### B. Comments Vouching for State Witnesses

Brummett also contends that the prosecutor committed misconduct when she made statements he alleges vouched for the State's witnesses.

9

A prosecutor may not state his or her personal opinion regarding the credibility of a witness during trial, as such statements amount to vouching for a witness. <u>Thomas v. State</u>, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012), <u>trans. denied</u>. However, "a prosecutor may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial." <u>Id.</u> It is the fact-finder's role to determine the truthfulness of witnesses. <u>Rose v. State</u>, 846 N.E.2d 363, 369 (Ind. Ct. App. 2006).

Brummett asserts prosecutorial misconduct occurred when the prosecutor vouched for the State's witnesses during closing argument by stating, "yes some kids do lie but these kids do not . . . they do not lie about the Defendant." Tr. p. 198. Brummett also contends the deputy prosecutor vouched for the credibility of K.A.'s boyfriend Clem when she said he "had nothing to gain by, by being here today. He just had to do the right thing." <u>Id.</u> at 199. Brummett argues the comments were "particularly egregious" because "[t]here was no other evidence against Mr. Brummett except the testimony of K.A. and A.A." Appellant's Br. p. 16.

> Indiana Rule of Professional Conduct 3.4(e) states,
>
> A lawyer shall not . . . in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness . . . or the guilt or innocence of the accused . . .

A prosecutor may comment on the credibility of witnesses only if the assertions are based on reasons which arise from the evidence. <u>Lainhart v. State</u>, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009).

The State argues that the prosecutor was merely explaining the reasons why the girls were believable witnesses and asserts that such arguments are an "appropriate comment on the evidence that the jury heard." Appellee's Br. p. 8. While we recognize that the prosecutor was responding to Brummett's contention that the girls were lying, this does not allow the prosecutor to personally vouch that the girls "do not lie." Tr. p. 198.

In Gaby v. State, this court held that "[a]lthough we recognize that the prosecutor's comments were in response to Gaby's argument that M.C.'s accusations were false, the prosecutor's response still crosses the line into improper vouching as her comments were not based solely on reasons which arose from the evidence, but rather, asserted a personal knowledge of the facts at issue." 949 N.E.2d 870, 881 (Ind. Ct. App. 2011).

Here, as in Gaby, the credibility of the girls is the central issue in the case. Id. We find that the prosecutor's statement that "these kids do not . . . they do not lie about the Defendant," was not based on any evidence outside of the girls' testimony and conclude that the statement constituted improper vouching. Tr. p. 198.

Next, we turn to the prosecutor's assertion that Clem "had nothing to gain by, by being here today. He just had to do the right thing." Id. at 199. While the prosecutor may discuss whether a witness has any interest, bias, or prejudicial reason to lie, she may not personally vouch for the witness or the justness of the cause. Lainhart, 916 N.E.2d at 938. In Lainhart, we held that a prosecutor's comments constituted improper vouching

11

when the prosecutor stated, concerning the testimony of a police officer, that "it would take an awful lot to get an officer to lie," and that "there is no place for it in our society." Id.

Here, while the prosecutor's comment that Clem, "had nothing to gain," was permissible, she went too far when she stated that Clem, "just had to do the right thing," as it suggested that the prosecutor knew Clem was telling the truth and constituted improper commentary on the justness of the cause in general. Tr. p. 199. We agree with Brummett that the prosecutor's remarks constituted improper vouching and commentary on the justness of the cause.

### C. Argumentative and Inflammatory Questions

Next, Brummett argues that the State asked argumentative and inflammatory questions during its cross-examination of Brummett. During direct examination, Brummett made a comment about the victims' possible dislike of him because he held the keys to the enclosure where their father's motorcycles and vehicles were kept while he was incarcerated. Brummett contends that the following exchange that occurred on cross-examination contained argumentative and inflammatory questions:

> [State]: At no point, at any time in your interview with Detective Shafer, did you try to elude [sic] to anything about anybody being worried about Harley Davidson's [sic] or cars or what have you[?] You never mentioned any of that did you?
> [Brummett]: Not to my knowledge.
> [State]: Okay. That's because it's not true, right? And that's what you've just come up with today conveniently, correct?
> [Brummett]: No, it is true.
> [State]: Okay. How long did it take you to think up that one?

12

[Brummett]: What do you mean?
[State]: I think you're clear on what I mean but I'll withdraw the question. You told the detective that you understood that people just don't kind of make this stuff up out of the no where, [sic] right?
[Brummett]: Correct.
[State]: And you have absolutely no reason that you could think of that these two young girls would lie about you, right?
[Brummett]: Yes.
[State]: Okay. Which girl do you like better?
[Brummett]: I didn't have a special.
[State]: You didn't have a preference?
[Brummett]: Uh-huh.
[State]: Did you enjoy touching both of their vagina's [sic] or was there one you like[d] better . . .
[Brummett]: I never did that.
[State]: . . . than the other?
[Brummett]: I never did that.

Tr. p. 175-76.

The attitude displayed by the prosecutor in the above exchange amounts to belligerence toward the defendant. We agree with Brummett that the questions were argumentative and inflammatory and amounted to prosecutorial misconduct.

## D. Revealing Inadmissible Evidence

Brummett argues that the prosecutor engaged in misconduct by revealing inadmissible evidence to the jury when, during the defense's examination of A.A. and during the cross-examination of the forensic interviewer, the prosecutor referred to uncharged acts in front of the jury. The first instance under examination, during the defense examination of A.A., was as follows:

[Defense Counsel]: And again, you didn't, you didn't tell the jury that today, right?

13

[State]: Judge, at this point I'm gonna have to object. The Court's already rules that the acts that aren't charged, the State's not to go into detail on it so it can't be a double edge sword here, Either I can go into everything.
[The Court]: Please come forward, come forward.

Tr. p. 75-76. The second exchange, during the cross examination of the forensic interviewer, was as follows:

[State]: And, and Judge I'm gonna object again. If wanna [sic] go into the uncharged acts before the defendant turned eighteen . . .
[The Court]: Hold on.
[State]: I'll go there . . .
[The Court]: Approach, approach.

Id. at 129-130.

While we do not believe that the prosecutor's references to uncharged acts in front of the jury was necessarily wise or appropriate, we must also note that, with regard to both statements, the prosecutor's objections were prompted by the defense's improper reference to the uncharged acts. Id. at 76-77, 129-130. Indeed, the trial court cautioned defense counsel in each instance that further questions regarding such uncharged acts would open the door for the State to question Brummett about the acts. Id. at 76, 130. As such, while we would caution that such objections should be made in such a manner as to avoid revealing uncharged acts to the jury, we do not find the objections to constitute prosecutorial misconduct.

### E. Cumulative Effect

We will now turn to Brummett's contention that the above instances of prosecutorial misconduct, when looked at cumulatively, resulted in fundamental error

14

that requires a reversal and a new trial. "It has been long held by this Court that when an isolated instance of misconduct does not establish grave peril, repeated instances may evidence a deliberate attempt to improperly prejudice the defendant and result in reversal." Kent v. State, 675 N.E.2d 332, 337 (Ind. 1996).

In Lainhart, this court held that the prosecutor's misconduct constituted fundamental error when the case involved conflicting testimony and hinged almost exclusively on the credibility of the witnesses. Lainhart, 916 N.E.2d at 938-939. We determined there that, because much of the State's misconduct "went straight to the credibility of the witnesses," we would not hold that the error was harmless.

Here, we find that the prosecutor improperly distinguished the roles of the prosecution and defense, vouched for the credibility of the witnesses and the justness of the cause, and asked argumentative and inflammatory questions. This case, like Lainhart, hinges largely on the credibility of the witnesses. Therefore, we conclude that the prosecutor's misconduct placed Brummett in grave peril and, cumulatively, amounted to fundamental error.

## II. Sufficiency of the Evidence

Brummett also argues that the State lacked sufficient evidence to convict him regarding one count of sexual misconduct with a minor. More particularly, Brummett argues that K.A.'s testimony that he touched her vagina at the kitchen table while playing cards with four other people was incredibly dubious.

15

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. Id. When we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. Id. We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id. Therefore, it is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. Id. at 147.

Under the "incredible dubiosity rule" we may "impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted 'inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" Rodgers v. State, 422 N.E.2d 1211, 1213 (Ind. 1981). We will reverse a conviction if the sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt. White v. State, 706 N.E.2d 1078, 1079-80 (Ind. 1999). Further, we will overturn a conviction based upon the incredible dubiosity rule when the testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. Baumgartner v. State, 891 N.E.2d 1131, 1138 (Ind. Ct. App. 2008).

16

K.A. testified Brummett touched her vagina underneath her pants while she, Brummett, and other family members were playing a card game at a table. She testified the table had a tablecloth, and Brummett "touched [her] on the outside of [her] clothes and then on the inside." Tr. p 41. K.A. testified Brummett did so by "kind of like put[ting] his leg in between [hers]" id., unbuttoning and unzipping her jeans, and touching her vagina for "[m]aybe ten minutes." Id. at 43. K.A. also told the person who interviewed her about the incident that "[she] would scoot [her] chair away and [Brummett] would scoot after [her][.]" Id. at 56. At trial, the testimony from K.A.'s grandmother and two aunts indicated they did not notice anything suspicious occurring between Brummett and K.A. during the card game in question.

Brummett argues K.A.'s testimony regarding the incident is incredibly dubious because it is not possible that he could have performed the alleged actions without arousing suspicion from the other individuals seated at the table. While we agree with Brummett that K.A.'s testimony might stretch the limits of credulity, this is not the test for incredible dubiosity. K.A.'s testimony does not run so counter to human experience that no reasonable person could believe it. Therefore, this Court will not invade the province of the jury by reweighing the evidence. Thus, this argument must fail.

### III. Testimony Regarding the Uncharged Out-of-State Incident

Brummett next contends that the trial court committed fundamental error when it admitted evidence that Brummett touched A.A. in another state on a family vacation.

17

At the outset, we note that we have already reversed on the prosecutorial misconduct issue and rule on this issue only for future guidance as the case will be re-tried.

A trial court has broad discretion in ruling on the admissibility of evidence, and, on review, we will disturb its ruling only on a showing of abuse of discretion.  Sparkman v. State, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000).  When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence supporting the decision.  Id.  A claim of error in the admission or exclusion of evidence will not prevail on appeal unless a substantial right of the party is affected.  Ind. Evidence Rule 103(a).  In determining whether error in the introduction of evidence affected a defendant's substantial rights, we assess the probable impact of the evidence on the jury.  Sparkman, 722 N.E.2d at 1262.

Here, Brummett did not make a contemporaneous objection.  The failure to object normally results in waiver and precludes appellate review unless the admission was fundamental error.  Willey v. State, 712 N.E.2d 434, 444 (Ind. 1999).  As noted above, fundamental error is an error "so prejudicial to the rights of the defendant as to make a fair trial impossible."  Id. at 445.

Here, during trial, the State asked A.A. during direct examination:

[State]:    What about um the last time something happened, do you remember when that would have been?
[A.A.]:    West Virginia.
[State]:    Okay.  And you were in West Virginia?  Were you visiting you[r] Dad?

18

```
[A.A.]:      Yes.
[State]:     Do you remember when that was?
[A.A.]:      January
[State]:     Okay of not this year but the year before?
[A.A.]:      Yes.
[State]:     Okay.  Was it the same kind of stuff?
[A.A.]:      Yes.
[State]:     Were there other times that he did the same thing that we
haven't talked about?
[A.A.]:      Yes.
```

Tr. p 70-1.

Prior to trial, Brummett moved to prohibit the State from eliciting testimony about allegations that occurred in other states, namely West Virginia and Arizona, as Brummett asserted that such testimony would be evidence of uncharged acts and run afoul of Indiana Evidence Rule 404.  The State argued that testimony regarding those allegations should be admissible for the purpose of establishing a timeline.  The trial court ruled:

> All right.  I think ah, as long [as] you go . . . don't go into the specific details regarding it, I think you can put at least ah, some information in it over 404-B [sic] in regard to ah, again motive, intent, preparation, plan, knowledge, identity, absence of mistake or accident ah, as to showing a, a pattern just for that . . . for those limited purposes.  Again, no details, no fact that he was charged, none of that stuff should come in aside from again just using the timeline.

Id. at 5-6.

Indiana Evidence Rule 404(b) states:

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
(2) Permitted Uses; Notice in a Criminal Case.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

19

preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

    (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

    (B) do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Brummett argues A.A.'s testimony regarding an alleged incident in West Virginia does not fall under any of the permitted uses described in Evidence Rule 404(b)(1).

While we find that the testimony concerning the alleged incident may have been improperly admitted, we cannot find that the admission regarding the uncharged act in West Virginia amounts to fundamental error. We conclude that the admission of this evidence did not place Brummett in grave peril or make a fair trial impossible.

## CONCLUSION

We conclude that the prosecutor engaged in prosecutorial misconduct by improperly distinguishing between the role of the defense and the prosecution, by improperly vouching for the State's witnesses, and by asking argumentative and inflammatory questions. The cumulative effect of this misconduct amounted to fundamental error, as it placed the defendant in grave peril and made a fair trial impossible. Consequently, the defendant is entitled to a new trial.

The judgment of the trial court is reversed and we remand for a new trial.

VAIDIK, C.J., concurs, and BAILEY, J., concurs in result.

20