## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2015, 8:48 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Adam B. Brower
Eric J. Massey
Banks & Brower, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eric Joya,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 31, 2015

Court of Appeals Case No.
49A02-1409-CR-606

Appeal from the Marion Superior Court

The Honorable Lisa F. Borges, Judge

Cause No. 49G04-1311-FB-75376

**Baker, Judge.**

[1] Eric Joya appeals his convictions for class B felony Child Molesting[1] and class C felony Child Molesting.[2] He argues that the cumulative effect from multiple instances of prosecutorial misconduct amounted to fundamental error and that the trial court erred in admitting testimony that was protected by the clergyman's privilege. Finding that Joya has failed to show that any prosecutorial misconduct amounted to fundamental error and that the trial court did not err in allowing the alleged clergyman to testify, we affirm.

## Facts

[2] In approximately May 2010, Joya met S.M. thorough Kingdom Hall, Church of Jehovah's Witnesses. S.M. began speaking to Joya at the gym that Joya and her Mother both attended. S.M. would also see Joya at Kingdom Hall or at functions for church members.

[3] On June 6, 2010, Joya attended a graduation party, where he saw S.M. Joya told S.M.—who was about to become a freshman in high school—that he liked her, gave her a bracelet, and asked her to be in a relationship with him. He then told S.M. to call him from her house when her parents were away from home. S.M. began calling Joya after school, and he would tell her how much she meant to him. Joya was twenty-three at the time of trial, and, in August 2010, S.M. informed him that she was thirteen.

---

[1] Ind. Code § 35-42-4-3(a).

[2] I.C. § 35-42-4-3(b).

[4] Joya and S.M. continued to speak on the telephone and to see one another at Kingdom Hall until August 2010, when Joya told her he did not want to be in a relationship with a younger girl. However, in September, Joya contacted S.M. and told her that he needed to speak with her and that he missed her. They began talking on the phone again when S.M.'s parents were not home. Joya told S.M. not to call when her parents were home because that might get him in trouble.

[5] In November 2010, Joya wanted to come over to S.M.'s home, and he told her to call him when her parents were gone. One day while her parents were away from home, S.M. called Joya. When he asked if he could come over, S.M. said yes. Joya came over to S.M.'s home and sat with her on the couch. He then scooted closer to her, kissed her on the mouth, and placed his hand on her vagina over her sweatpants. He also put his hand on S.M.'s chest and moved it back and forth. He then picked up S.M., took her to her room, and laid her on her bed. Joya then undressed S.M. and took his clothes off. He got on top of S.M. and put his penis in her vagina. S.M. told Joya that she was uncomfortable and that it felt wrong. Joya told S.M. that he loved her.

[6] S.M. told Joya to stop and he got up and put his clothes on. Joya told S.M. not to say anything to anyone because he was worried he would get into trouble with the police. S.M. and Joya never spoke on the phone again, although S.M still saw Joya at Kingdom Hall.

[7] S.M. did not say anything to anyone about what had happened with Joya because she was scared and Joya had told her not to say anything. Approximately a year after the incident, an elder at Kingdom Hall, Chris Hollars, made a report to Child Protective Services (CPS) that S.M. might have been molested. Hollars then came to S.M.'s home to speak with S.M. and her family. After she spoke with Hollars, S.M. talked to a CPS worker and told the worker everything that had happened with Joya.

[8] On November 22, 2013, the State charged Joya with class B felony child molesting and class C felony child molesting. A jury trial took place on August 7, 2014. At trial, Hollars testified that he had made a report to CPS regarding what had occurred between S.M. and Joya. He testified that the report did not stem from anything S.M. told him and that he did not speak with Joya directly regarding the incident.

[9] The jury found Joya guilty as charged. After the verdict was announced, Joya moved for a mistrial, arguing that the prosecutor had engaged in misconduct. The trial court told Joya it would hear further argument on the request for a mistrial at the sentencing hearing.

[10] On August 15, 2014, the trial court conducted a sentencing hearing. It denied Joya's request for a mistrial, finding that Joya had failed to object to any alleged misconduct, that the jury had been instructed that counsel's arguments were not evidence, and that the prosecutor's comments did not constitute fundamental error. The trial court then sentenced Joya to six years for class B felony child

molesting, with four years suspended, and to two years for class C felony child molesting.  The terms were ordered to be served concurrently.  Joya now appeals.

# Discussion and Decision

## I. Prosecutorial Misconduct

[11]  Joya contends that the prosecutor engaged in misconduct that placed him in grave peril and rendered a fair trial impossible.  Although Joya did not object to the misconduct at trial, he argues that the repeated instances of misconduct resulted in fundamental error.  When reviewing a claim of prosecutorial misconduct, we will first determine whether the prosecutor engaged in misconduct.  *Carter v. State*, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011).  If this Court finds that there has been misconduct, we then determine "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected."  *Id.*  The gravity of the peril is not measured by the degree of impropriety of the conduct but, rather, by the probable persuasive effect of the misconduct on the jury's decision.  *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002).  In order to preserve a claim of prosecutorial misconduct, the defendant must both object to the alleged misconduct and request an admonishment and move for a mistrial.  *Cowan v. State*, 783 N.E.2d 1270, 1277 (Ind. Ct. App. 2003).

[12]  Joya did not object to any alleged misconduct at trial and, therefore, did not properly preserve his claim.  Thus, his argument is waived unless he establishes

both the grounds for prosecutorial misconduct *as well as* the grounds for fundamental error. *Booher*, 773 N.E.2d at 818. Fundamental error is a "substantial, blatant violation of due process" so prejudicial to the rights of the defendant that it renders a fair trial impossible. *Hall v. State*, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010). Recently, in *Ryan v. State*, 9 N.E.2d 663, 668 (Ind. 2014), our Supreme Court reiterated and clarified our standard of review for fundamental error in prosecutorial misconduct cases:

> In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." *Id.* The element of such harm is not established by the fact of ultimate conviction but rather "depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled."

(quoting *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 2002)).

# A. Inculpatory Evidence

[13] Joya first argues that it was fundamental error for the prosecutor to imply that he had additional inculpatory evidence not presented to the jury during trial. Joya argues the following statements—made during closing argument—were misconduct:

> You heard Elder Hollars. He didn't have to come in and testify. He didn't have to do anything. He told you as much as he could given the restriction that the law put in place. There's [sic] certain things that he just can't testify about. But as much as he could, he told you.

Tr. p. 152-53. Joya contends that the above statement suggested to the jury that the prosecutor knew that Hollars had evidence, not introduced during trial, which pointed to Joya's guilt.[3]

[14] Joya is correct that "[i]t is clearly misconduct for a prosecutor to imply that he possesses evidence not known to the jury indicating that the defendant is guilty of the crime charged." *Johnson v. State*, 453 N.E.2d 365, 369 (Ind. Ct. App. 1983). In general, the prosecutor's comments here—implying that Hollars had incriminating evidence he could not share with the jury—would be objectionable misconduct.

[15] However, during its closing argument, the defense raised allegations and inferences that Hollars did not know anything about what happened between Joya and S.M., stating that Hollars: "knows absolutely nothing about what really went on, if anything." Tr. p. 146. Hollars was not permitted to testify regarding what S.M. told him about the incident, and, as mentioned above, generally the State would not be allowed to discuss any outside evidence during closing arguments. But our Supreme Court has held that "[p]rosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Cooper v. State*, 854

---

[3] Joya also contends that the prosecutor's assertion during closing argument that Hollars's testimony corroborated S.M.'s testimony was a misleading and inaccurate statement of the evidence. Joya argues that Hollars's testimony did not corroborate S.M.'s testimony. We disagree. Hollars's testimony as to his report and meeting with her family corroborated S.M.'s statements that she never intended to report the crime, but only told someone what had happened when Hollars came to visit her family to tell them he had made a report that S.M. had been molested. Tr. p. 54, 75-77. Therefore, this argument avails Joya of nothing.

N.E.2d 831, 854 (Ind. 2006). Here, the prosecutor's comments were in direct rebuttal to defense counsel's statements alleging that Hollars knew nothing about the molestation. Therefore, we find no error here.

# B. Improper Vouching

[16] Joya next argues that prosecutorial misconduct occurred when the prosecutor improperly vouched for S.M.'s credibility.[4] A prosecutor may not state his or her personal opinion regarding the credibility of a witness during trial, as such statements amount to vouching for a witness. *Thomas v. State*, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012). However, "a prosecutor may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial." *Id.* It is the fact-finder's role to determine the truthfulness of witnesses. *Rose v. State*, 846 N.E.2d 363, 369 (Ind. Ct. App. 2006).

[17] Joya maintains that the following comments made by the prosecutor during closing argument constitute improper vouching:

- "Now why should you believe S.M.? The evidence shows you that she is credible, ladies and gentlemen. She has no reason to lie about this. Why would she lie about it?" Tr. p. 141.

- "S.M. took an oath when she went up there and she swore to tell the truth, and she told you what happened." *Id.* at 142.

---

[4] Joya also argues that the detective assigned to S.M.'s case—Detective Shawn Looper—improperly vouched for S.M. when he said he did not interview S.M. himself because the recorded CPS interview was "sufficient at the time for what I needed on my end." Tr. p. 101. Joya maintains that this testimony improperly suggested to the jury that Detective Looper believed S.M. This argument is utterly baseless, and we will not entertain it.

- "These are not families that are in a conflict that need to lie about each other.  This is a girl telling you the truth about what happened to her." *Id.* at 143.

- "If she was lying, if she had any reason to make this up, she would come here and say yes, in fact, I remember.  It was June [2][,] and I told him I was 13 years old.  No, she told you the truth."  *Id.* at 151.

- "If you have a reason to lie, to make this up, why not sabotage his brother's relationship."  *Id.* at 153.

- "And when you go back there and you think about these elements that you can check, think about why S.M. would be here if this didn't happen to her. Think about that, and if you can come up with a reason because she has absolutely no reason to make this up.  She has no reason to lie about it."  *Id.* at 154.

- "Then don't come back and say I believe her but, because there is not but.  You believe her, she is a child."  *Id.*

Joya contends that these statements are not based on reasons arising from evidence, and that therefore, they constitute improper vouching.

[18]     While we find that the majority of these statements were based on reasons arising from the evidence, there are some comments here that give cause for concern.  The prosecutor's statements that S.M. was a "girl telling you the truth about what happened to her," that "S.M. took an oath when she went up there and she swore to tell the truth, and she told you what happened," and that "she told you the truth," suggest that the prosecutor had personal knowledge of S.M.'s credibility.  *Id.* at 142, 143, and 151.  In *Brummett v. State*, this Court recently found that it was misconduct for a prosecutor to state that "yes some kids do lie but these kids do not ... they do not lie about the Defendant." 10 N.E.3d 78, 86 (Ind. Ct. App. 2014).  The statements made by the prosecutor in the instant case are too similar to be ignored.  However, in the *Brummett* case

we found multiple instances of prosecutorial misconduct that amounted to fundamental error. *Id.* at 88. Here, we determine that these statements alone did not deprive Joya of a fair trial. The jury was instructed that the opening and closing statements of counsel were not evidence, and these statements alone do not amount to fundamental error. Appellant's App. p. 108.[5]

## II. Hollars's Testimony

[19] Next, Joya argues that the trial court erred in admitting testimony that was protected by the clergyman's privilege.[6][7] The admission of evidence at trial is a matter left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review these determinations for abuse of that discretion, and will reverse only when admission is clearly against the logic and effect of

---

[5] While we do not find that the statements constitute fundamental error, we would be remiss if we neglected to caution counsel to remember that Indiana Rule of Professional Conduct 3.4(e) prohibits an attorney from "stat[ing] a personal opinion as to the justness of a cause," or the "credibility of a witness."

[6] Joya also argues that Hollars's testimony regarding the report and visit to S.M.'s family was irrelevant. This is not the case, as the State used this testimony to explain why S.M. reported the molestation. Tr. p. 153-154. Joya argues that Hollars never explicitly testified that S.M. came forward because of his report. However, it is clear from the record that his testimony corroborates S.M.'s testimony that she finally spoke about the molestation because Hollars came to her. *Id.* at 54.

[7] Joya also argues that Hollars's testimony was double hearsay. However, he points us to no specific statement that constitutes hearsay—an "out-of-court statement offered to prove the truth of the matter asserted." Ind. R. Evid. 801. Rather, Joya seems to suggest that the fact that Hollars testified that he made a report is somehow hearsay because Hollars must have heard the information in the report from another source. We will not entertain such a general and tenuous argument. However, in reading the record, we do note that Hollars did testify that Joya had, in his confession, admitted "that he had had sexual relations with S.M." Tr. p. 79. However, Joya made no objection to this statement and did not assert that it was hearsay in his brief. Therefore, any argument regarding the statement has been waived. Moreover, we do not find fundamental error, as Hollars later explicitly clarified that he had not personally spoken to Joya about the matter. *Id.* at 80.

the facts and circumstances and the error affects a party's substantial rights. *Id.* at 260.

[20] The clergyman privilege statute, set forth in Indiana Code section 34-46-3-1(3), provides that:

> Except as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications:
>
> . . .
>
> (3) Clergymen, as to the following confessions, admissions, or confidential communications:
>
>> (A) Confessions or admissions made to a clergyman in the course of discipline enjoined by the clergyman's church.
>>
>> (B) A confidential communication made to a clergyman in the clergyman's professional character as a spiritual adviser or counselor.

Joya maintains that Hollars's testimony revealed information that was privileged pursuant to Indiana Code section 34-46-3-1(3).

[21] Here, Hollars testified that he never spoke to Joya regarding S.M. Tr. p. 78. Hollars merely testified regarding the filing of a report with CPS that Joya had molested S.M. and informing S.M.'s family of that report. *Id.* at 75-77. He testified only to the circumstances surrounding the report. Therefore, we find that Hollars's testimony did not reveal confidential communications in violation of the clergyman's privilege. Rather, Hollars testified specifically that he had never spoken to Joya about the incident and, therefore, he was not privy to any confession about which he could testify. Thus, we find that the trial court did not err in allowing Hollars to testify.

The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.