## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2016, 8:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Travion D. Kirkland,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 9, 2016

Court of Appeals Case No.
20A03-1507-CR-1057

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1312-MR-9

**Baker, Judge.**

[1] Defendant Travion Kirkland appeals his conviction for Felony Murder.[1] Kirkland argues that there is insufficient evidence supporting the conviction. He also argues that the trial court abused its discretion when it found certain aggravating circumstances during sentencing and that the fifty-nine-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character. Finding that the evidence is sufficient, that the trial court did not abuse its discretion during sentencing, and that the sentence is not inappropriate, we affirm.

## Facts

[2] On April 16, 2012, Kirkland went to his grandmother's house in Elkhart with his cousin, DeAndre Jones. Kirkland and Jones arrived at Kirkland's grandmother's house sometime around 10:15 p.m. During the evening of April 16, Kirkland texted two of his friends, asking them if they wanted to "hit a lick," meaning "to rob someone, take somebody's money, [or] beat somebody up." Tr. p. 410, 431. However, both friends declined. Kirkland and Jones left Kirkland's grandmother's house at 10:22 p.m. and returned around 11:00 p.m.

[3] That day, Vince Jacobs and Dakota Ellsworth were visiting the home of Jesse Bowen in Elkhart. At some point between 10:30 p.m. and 11:00 p.m., two Black men entered the living room of the house and demanded money and marijuana. The men were dressed in black and were wearing some sort of mask

---

[1] Ind. Code § 35-42-1-1(2); I.C. § 35-42-5-1.

or nylon covering over their faces. Ellsworth identified one of the men as Kirkland, with whom he was familiar because they had gone to school together and because Kirkland had purchased marijuana from Bowen in the past while Ellsworth was also present. However, Ellsworth did not recognize the other man.

[4] According to Ellsworth, the man that he identified as Kirkland had a silver handgun in his right hand. Kirkland grabbed Bowen by putting his left arm around Bowen, and a struggle ensued. After Bowen told Kirkland to let him go so he could get the "stuff," tr. p. 153, Bowen grabbed an aluminum baseball bat and swung it at the two men, hitting one of them. At this point, Kirkland shot Bowen, who eventually died from the resulting gunshot wound.

[5] After the shot was fired, Ellsworth ran out of the back door, while Jacobs ran out of the front door. Once outside, Ellsworth saw Kirkland and the other man running down an adjacent street. Ellsworth and Jacobs sought help from Bowen's neighbors, who called 911.

[6] After Kirkland and Jones returned to Kirkland's grandmother's house, she noticed that Jones had an emerging knot on his head. Kirkland told his grandmother that Jones had fallen down at Ferrettie Baugo Park. However, Kirkland later told Ellsworth's girlfriend that Jones had slipped and fallen at a 7-Eleven, and told someone else that Jones had fallen at a gas station. When questioned by police, Kirkland told them that Jones had fallen at the park and

hit his head on the car in which they had been traveling. However, there were no visible marks on the car.

[7] At the scene of the shooting, Detective Charles Osterday of the Elkhart County Sheriff's Department discovered a dark blue piece of cloth lying in the street on the north side of the property. Forensic testing of DNA found on the piece of cloth showed that one in 1.2 billion unrelated people would have the genetic profile identified on the cloth, and that Kirkland could not be excluded. Further, a dark blue, long-sleeve t-shirt with one of its sleeves missing was found in Kirkland's grandmother's home. Forensic analysis revealed that there were no significant differences between the composition of the shirt and the composition of the piece of cloth found at the scene of the shooting.

[8] Officers also found a .22-caliber shell inside Bowen's home. Forensic testing on the shell casing and the bullet retrieved from Bowen's body showed that the bullet came from the casing found in the home. At trial, Kirkland's friend testified that he had seen Kirkland in possession of a .22-caliber handgun in the summer of 2011.

[9] On December 18, 2013, the State charged Kirkland with murder, and his jury trial took place on June 1, 2015. On June 5, 2015, the jury found Kirkland guilty as charged. At the July 2, 2015, sentencing hearing, the trial court considered aggravators and mitigators, explicitly stating that any one of the aggravators taken individually, or all of them taken as a whole, would outweigh

the mitigators. Appellant's App. p. 116. The trial court sentenced Kirkland to fifty-nine years imprisonment. Kirkland now appeals.

# Discussion and Decision

# I. Sufficiency of the Evidence

First, Kirkland argues that there is insufficient evidence to support his conviction. To convict Kirkland of murder, the State was required to prove beyond a reasonable doubt that he knowingly took property from Bowen by using or threatening the use of force or by putting Bowen in fear, and that while doing so, Bowen was killed. I.C. § 35-42-1-1(2); I.C. § 35-42-5-1. Our standard of review for sufficiency of the evidence is well settled:

> When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. When we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Therefore, it is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision.

*Brummett v. State*, 10 N.E.3d 78, 89 (Ind. Ct. App. 2014) (internal citations omitted).

[11]    In support of his argument, Kirkland contends that the testimony of Ellsworth identifying him as the shooter fails to support the reasonable inferences necessary to conclude that Kirkland committed the offense of felony murder. Among other alleged discrepancies in Ellsworth's testimony, Kirkland points to the fact that Ellsworth initially stated that Bowen hit Kirkland in the head with a glass bottle, but later stated that Bowen hit Kirkland with a baseball bat. Kirkland also argues that Ellsworth's testimony was not corroborated by other evidence in the record, as Jacobs was too intoxicated at the time of the incident to provide reliable testimony.

[12]    However, it is the factfinder's role to assess the credibility of Ellsworth's statements, and the jury deemed them credible. Our role is limited to determining whether the evidence presented by the State could lead a reasonable factfinder to find all the requisite elements to be established beyond a reasonable doubt.

[13]    The State presented evidence from which a reasonable factfinder could conclude that Kirkland committed felony murder. This evidence includes Kirkland's texts discussing "hit[ting] a lick," tr. p. 410, 431, Ellsworth's identification of Kirkland, and the piece of blue fabric found at the scene of the shooting, which contained DNA linking it to Kirkland. Considering the evidence in the light most favorable to the trial court's ruling, we find the evidence sufficient to sustain the verdict.

# II.  Sentencing

Next, Kirkland argues that the trial court abused its discretion during sentencing by considering Kirkland's juvenile history and inconsistent statements to be aggravating factors.  He also argues that his fifty-nine-year sentence is inappropriate in light of the nature of the offense and his character.

# A.  Abuse of Discretion

Under the advisory sentencing scheme, trial courts no longer have any obligation to weigh aggravators and mitigators against each other when imposing a sentence.  *Richardson v. State*, 906 N.E.2d 241, 243 (Ind. Ct. App. 2009).  Instead, a trial court may impose any sentence authorized by statute and must provide a sentencing statement that gives a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence.  *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

First, Kirkland argues that the trial court's consideration of his juvenile referral for possession of marijuana as an aggravating circumstance was an abuse of discretion because such juvenile history is insignificant for sentencing purposes.  However, under Indiana law, juvenile adjudications reflecting a history of criminal behavior may be considered as aggravating circumstances.  *Williams v. State*, 838 N.E.2d 1019, 1021 (Ind. 2005).  Moreover, according to our Supreme Court, "[b]ecause the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence, . . . a trial court can not now be said to have abused its discretion in

failing to 'properly weigh' such factors." *Anglemyer*, 868 N.E.2d at 491. As such, it is not our role to review the weight assigned to the aggravating and mitigating factors by the trial court. Because Kirkland's juvenile history is a proper aggravator and we may not consider its weight, we find no abuse of discretion on this issue.

[17] Kirkland also argues that the trial court abused its discretion when it found his inconsistent statements regarding the incident to be an aggravating factor. In support of this argument, Kirkland seeks to establish that his statements to police and during trial were not in fact inconsistent with each other. It is unclear whether the existence of inconsistent statements is a proper consideration when determining aggravating factors; regardless, if the trial court would have imposed the same sentence even if it had not considered an improper aggravator, we will affirm the sentence. *Id.* Considering the trial court's statement that "any one of the aggravators taken individually or all of them taken as a whole outweigh the mitigators," appellant's app. p. 116, it is clear that the trial court would have imposed the same sentence even without considering this aggravator. In sum, we do not find that the trial court abused its discretion when considering the aggravating and mitigating factors at sentencing.

## B. Appropriateness

[18] Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the

offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principle role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[19] Turning to the nature of Kirkland's offense, we concede that its circumstances were not particularly exceptional. However, as noted by the trial court, Kirkland left the victim languishing and did not seek medical attention for him. Kirkland's fifty-nine-year sentence was only enhanced four years above the advisory sentence of fifty-five years, and was six years less than the maximum sentence of sixty-five years. Ind. Code § 35-50-2-3(a). Considering the relatively minimal nature of the enhancement, we find that it was not inappropriate in light of the nature of the offense.

[20] Turning to Kirkland's character, we note that the trial court found that Kirkland tried to involve others in his plan to rob Bowen, he continued to use illegal drugs frequently after his juvenile referral, and he admitted that he committed a residential burglary at Bowen's residence prior to the felony murder. We acknowledge that the evidence of Kirkland's character is not especially egregious; however, as previously stated, our role is to leaven the outliers, not to achieve a "correct" sentence. As the four-year enhancement was relatively minimal, we do not find that the sentence imposed by the trial court was inappropriate in light of the nature of the offense and Kirkland's character.

The judgment of the trial court is affirmed.

Bradford, J., and Pyle, J., concur.