## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 14 2019, 8:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT MOTHER

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEY FOR APPELLANT FATHER

Amanda McIlwain
Legal Aid Corp. of Tippecanoe Co.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General
Indianapolis, Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parental Rights of E.H. and K.H. (Minor Children)

H.W. (Mother) and P.H. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

August 14, 2019

Court of Appeals Case No. 19A-JT-311

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause Nos.
79D03-1805-JT-71
79D03-1805-JT-72

**May, Judge.**

[1] H.W. ("Mother") and P.H. ("Father") (collectively, "Parents") appeal the involuntary termination of their parental rights to E.H. and K.H. (collectively, "Children"). Mother argues the Department of Child Services ("DCS") violated her due process rights when it allegedly violated the trial court's order to reinstate Mother's visitation with Children. Father argues DCS did not offer certain services to him and termination of his parental rights was not in Children's best interests. We affirm.

## Facts and Procedural History

[2] Parents are the biological parents of E.H. and K.H., born February 15, 2016, and May 28, 2017, respectively. On February 3, 2017, DCS received a report that Parents were using methamphetamine. The family could not be located on that date. On February 14, 2017, DCS received a report that Mother was at the courthouse with E.H. and was under the influence of drugs. DCS investigated the claim and found Mother and E.H. at Mother's court hearing. Mother tested positive for heroin and methamphetamine. E.H. tested positive for methamphetamine and was removed from Mother's care. Father could not be located.

[3] On February 15, 2017, DCS filed a petition alleging E.H. was a Child in Need of Services ("CHINS"). On April 6, 2017, the trial court adjudicated E.H. a CHINS. Mother was incarcerated and Father failed to appear at the hearing.

On April 25, 2017, the trial court entered its dispositional order. The order required Mother to participate in "substance abuse assessment and treatment, mental health assessment, individual counseling, case management, intensive parenting education, random drug screens, and parenting time." (Father's App. Vol. II at 28.) The order required Father to participate in "substance abuse assessment and treatment, psychological evaluation, individual counseling, Character Restoration program, case management and/or Father Engagement services, random drug screens, and parenting time." (*Id.*)

[4] K.H. was born on May 28, 2017, and exhibited symptoms of withdrawal at birth. Hospital staff reported Mother behaved erratically while in the hospital and exhibited symptoms of methamphetamine use. At the time, Father was incarcerated. DCS took K.H. into custody on June 1, 2017, and filed a petition to declare K.H. a CHINS on June 2, 2017. On July 27, 2017, the trial court declared K.H. a CHINS based on Mother's drug use and Father's incarceration. The same day, the trial court entered its dispositional order, requiring Parents to participate in the services ordered in its dispositional order regarding E.H.

[5] At first, Parents complied with services. However, over time Parents relapsed into drug use and ceased participating in services. On October 30, 2017, the trial court issued a Writ of Attachment for Parents for failure to appear at the status hearing. At that hearing, the trial court suspended Father's visitation until Father tested negative for methamphetamine. On November 16, 2017, Mother's visitation was suspended because she was not taking "constructive

[safety] suggestions appropriately." (Ex. Vol. I at 155.) The trial court eventually reinstated visitation for both Parents.

[6] Parents did not appear at the February 12, 2018, permanency hearing. At that hearing, the trial court suspended Parents' visitation pending their completion of thirty days of clean drug screens. In addition, the trial court indicated that if visitations were reinstated, Parents would be required to submit drug screens prior to each visit in addition to the previously-ordered random drug screens. Visitation was never reinstated for Parents.

[7] On April 23, 2018, the trial court changed Children's permanency plan from reunification to termination of parental rights and adoption. On May 22, 2018, DCS filed petitions to terminate Parents' parental rights to Children. On July 31 and August 14, 2018, the trial court held hearings regarding the termination petitions. On January 8, 2019, the trial court issued an order terminating Parents' rights to Children.

# Discussion and Decision

## Due Process

[8] In a termination of parental rights proceeding, parents have certain due process rights:

> When a State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982). Although due process has never been

precisely defined, the phrase embodies a requirement of "fundamental fairness." *E.P. v. Marion County Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995) (quoting *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26, 101 S. Ct. 2153, 68 L.Ed.2d 640 (1981).

*J.T. v. Marion Cty. Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind. Ct. App. 2000), *reh'g denied, trans. denied, abrogated on other grounds by Baker v. Marion Cty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004) (abrogation based on underperformance of counsel). In addition, "procedural irregularities in a CHINS proceedings [sic] may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her parental rights." *A.P. v. Porter Cty. Office of Family & Children*, 734 N.E.2d 1107, 1112-13 (Ind. Ct. App. 2000), *reh'g denied, trans. denied*.

## *Mother*

On June 22, 2018, approximately one month after DCS filed its petition to terminate Parents' rights to Children, Mother requested the trial court reinstate her parenting time with Children, as parenting time had been suspended in January 2018 because Parents were unable to maintain sobriety. The trial court ordered Mother to submit to a hair follicle test that day, and

> [s]hould Mother's drug screens return positive, Mother may not commence parenting time and matters regarding visitation will be addressed on the below date and time. Should Mother's drug screens return negative, Mother may commence supervised parenting time and said parenting may continue so long as Mother is submitting to all drug screens as requested and remains drug and alcohol free.

(Ex. Vol. I at 6.)[1] The record is silent regarding the outcome of Mother's hair follicle test on that date, but the trial court indicated in its findings that she tested positive for buprenorphine, or suboxone, on June 26, 2018.

[10] On July 31, 2018, the trial court held a hearing on DCS's termination petitions, and Mother again requested visitation. The trial court expressed concern that Mother had tested positive for buprenorphine, but Mother told the trial court that she had a prescription for that substance. The trial court told Mother it did not have time to consider the visitation issue at the July 31 hearing and if the parties could not agree regarding whether visitation should be reinstated, the issue would have to be addressed at the August 14, 2018, hearing.

[11] DCS did not reinstate visitation for Mother. At the August 14 hearing, Mother again argued she was entitled to visitation with Children and claimed the trial court was violating her due process rights by denying her visitation with her Children. DCS argued Mother had not seen Children since January 2018, when visits were stopped due to Mother's drug use; that Mother was not currently participating in a drug treatment program; and that Mother did not have stable housing and employment. The trial court said it would take the matter under advisement. The trial court did not reinstate Mother's visitation and terminated her parental rights to Children on January 18, 2019.

---

[1] The page numbers for the Exhibit Volumes are based on the electronic page numbers and not those noted on the document.

[12] Mother contends her due process rights were violated when the trial court allowed DCS to violate the trial court's order to reinstate Mother's visitation with Children following a negative drug test. Mother does not challenge any of the findings of the trial court, which state, relevant to Mother:

> 12. Mother was convicted of Theft (Class D Felony) and Trespass (Class A Misdemeanor) on April 22, 2014. Mother was convicted of Theft (Class D Felony), Check Fraud (Class D Felony), and Intimidation (Level 6 Felony) on April 1, 2015. Various Petitions to Revoke Probation and Motions to Commit were filed.

> 13. Mother was incarcerated at the onset of the CHINS proceeding. Mother was released from jail in March 2017 directly to inpatient substance abuse treatment at Lifespring Incorporated. Mother completed treatment on May 24, 2017.

> 14. Mother completed an initial clinical intake assessment and a substance abuse evaluation in July 2017. Mother disclosed a history of substance use involving multiple substances. At that time, Mother was struggling with methamphetamine and opiate use. Mother reported symptoms of anxiety and depression that did not meet diagnostic criteria. It was recommended that Mother participate in intensive outpatient treatment (IOP). Mother was referred to IOP at Wabash Valley Alliance in July 2017. Mother failed to attend and was discharged unsuccessfully in December 2017.

> 15. In the beginning of January 2018, Mother relapsed on methamphetamine. Mother was admitted for treatment at Sycamore Springs on February 5, 2018 where she remained for approximately three (3) weeks. After release from Sycamore Springs, Mother was prescribed Suboxone. Mother struggled

with taking Suboxone as prescribed at times even as recently as August 2018.

16. During the CHINS proceedings, Mother tested positive for the presence of drugs on 06/28/2017 (opiates), 07/19/2017 (opiates), 07/21/2017 (opiates), 07/31/2017 (tramadol), 08/02/2017 (tramadol/opiates), 08/07/2017 (tramadol), 08/11/2017 (opiates/marijuana), 08/24/2017 (opiates), 09/19/2017 (buprenorphine/opiates), 09/21/2017 (buprenorphine/opiates), 10/02/2017 (marijuana), 10/12/2017 (buprenorphine/tramadol/opiates/oxymorphone), 10/16/2017 (marijuana), 11/01/2017 (opiates), 01/19/2018 (methamphetamine), 01/29/2018 (methamphetamine), 06/13/2018 (buprenorphine), 06/14/2018 (buprenorphine), 06/21/2018 (buprenorphine), and 06/26/2018 (buprenorphine). Mother failed to submit to all drugs screens as requested.

17. Mother completed a mental health assessment in July 2017 revealing no cognitive or developmental barriers to reunification. Mother failed to regularly attend or participate in recommended counseling.

18. Mother was unsuccessfully discharged from case management services by several providers. Mother failed to make progress toward goals of stable employment, stable housing, financial management, enhanced parenting, and sobriety.

19. Mother was initially consistent in participating in services. However, Mother's attendance and participation in services deteriorated as the case progressed. Mother failed to maintain consistent contact with DCS. Mother was incarcerated again from March 15, 2018 to May 2018. After release from incarceration in May 2018, Mother was unable to be located until June 2018.

20. At the time of the termination hearing, Mother had not obtained adequate housing. Mother reported renting a room from a friend for $100.00 per week. Mother has reported sporadic employment at various times although Mother has failed to provide verification of employment as requested. Mother relies on the bus system or rides from friends and family. Mother has no independent means of transportation.

21. Mother initially participated in supervised parenting time. Mother provided primary care for the children during visits and was prepared with appropriate supplies. Mother was capable of meeting the children's basic needs and demonstrated positive interactions. Mother was bonded with the children. Mother's parenting time was transitioned to the home and the level of supervision was decreased.

22. However, Mother's parenting time was thereafter returned to a fully supervised level at a facility after Mother was observed driving the children. Mother's request to transport the children had been denied as Mother had no valid driver's license or child restraint systems. Father arrived at Mother's home during a visit at which time he became angry and verbally abusive to the extent law enforcement was contacted.

23. Eventually, Mother's parenting time was suspended for continued methamphetamine use. Mother failed to submit to drug screens to demonstrate a thirty (30) day period of sobriety in order to resume parenting time. Mother has had no contact with the children since January 2018.

(Father's App. Vol. II at 29.) As Mother does not challenge the findings, we accept them as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992)

("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[13] Mother alleges the trial court violated her due process rights when it did not reinstate visitation after DCS filed a petition to termination Parents' parental rights to Children, but she has not alleged she was prejudiced by this State action. *See In re T.W.*, 831 N.E.2d 1242, 1247 (Ind. Ct. App. 2005) (rejecting mother's argument regarding an alleged due process violation because she had not demonstrated the alleged violation prejudiced her). Mother's non-compliance with services, habitual drug use, and inability to maintain employment and housing would not have changed had the trial court allowed her to restart supervised visitation with Children, whom she had not seen in at least six months. Nor can we see how, under such circumstances, visitation with Mother could have been in Children's best interests. We reject Mother's assertion that the trial court denied her due process.

### Father

[14] Father asserts his due process rights were violated in three ways: (1) that K.H. should not have been adjudicated a CHINS; (2) that DCS did not accurately report Father's progress in services to the trial court; and (3) that DCS did not make referrals for services as ordered by the trial court. We will address each issue separately.

[15] First, Father challenges K.H.'s CHINS adjudication. However, Father did not argue before the trial court, as he does appeal, that "[t]he findings of fact issued

in K.H.'s case do not raise to the level of a child in need of services adjudication." (*Id.* at 16.) Therefore, the issue is waived, as a party may not raise an argument for the first time on appeal. *N.C. v. Indiana Dept. of Child Servs.*, 56 N.E.3d 65, 69 (Ind. Ct. App. 2016), *trans. denied.* Further, the time for Father to appeal the validity of K.H.'s CHINS adjudication has long passed, as the disposition order in the matter was issued August 14, 2017. *See Matter of N.C.*, 72 N.E.3d 519, 526 n.6 (Ind. Ct. App. 2017) (noting long line of appellate cases that declare the dispositional order in a CHINS case the "final judgment" required for appeal); *see also* Indiana Rules of Appellate Procedure 9(A)(1) (appeal of a final judgment must be initiated no more than thirty days after the entry of the final judgment).

[16]  Second, Father argues DCS did not provide "accurate written documentation of the outcomes of his services." (Br. of Father at 18.) However, Father has not directed us to where this inaccurate documentation or lack of accurate documentation occurred during the proceedings, and therefore we are unable to consider his argument. *See* Indiana Rules of Appellate Procedure 48(A)(8)(a) (argument must include citations to the record relied on); *see also Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012) (appellate court will not search the record to find the basis for a party's argument), *trans. denied.*

[17]  Finally, Father argues DCS did not provide a referral for a psychological evaluation as ordered in the trial court's dispositional order in the CHINS case. However, we have long held "failure to provide services does not serve as a basis on which to attack a termination order as contrary to law." *In re H.L.*, 915

N.E.2d 145, 148 n.3 (Ind Ct. App. 2009). Additionally, Father may not "sit idly by without asserting a need or desire for services" and then successfully argue on appeal that he was denied services. *In re B.D.J.*, 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). As Father did not contact DCS to inquire regarding the required psychological evaluation ordered by the trial court, he cannot now assert the non-occurrence of that evaluation as error.

## Termination of Parental Rights

[18] Father also challenged the termination of his parental rights to Children. We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[19] "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* However, a trial court must subordinate the interests of the parents to those of the children when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely

because there is a better home available for the children, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet parental responsibilities. *Id.* at 836.

[20] To terminate a parent-child relationship, the State must allege and prove:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

Father does not challenge the trial court's findings, and thus we accept them as true. *See Madlem*, 592 N.E.2d at 687 ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."). Parents argue the trial court's findings do not support its conclusion that termination was in Children's best interests.

### Best Interests of Children

In determining what is in Children's best interests, a trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment, along with the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by

clear and convincing evidence that termination is in Children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[23]     Regarding Children's best interests, the trial court found:

> 24.  Father has a lengthy criminal history.  Father was convicted of Residential Entry and Theft in April 2001, Confinement and Battery in August 2001, Theft in March 2004, Theft in April 2004, Residential Entry and Possession of Marijuana with Prior Conviction in January 2007, Habitual Traffic Violator in August 2009.  Father was convicted of Burglary (Class B felony) on February 24, 2012.  Various Petitions to Revoke Probation were filed.  At the onset of the CHINS cases, Father remained on probation.

> 25.  Father participated in an initial clinical assessment in July 2017 at which time Father disclosed a long-term history of substance use involving multiple substances.  Father had just completed a fourteen (14) day inpatient rehabilitation program at Salvation Army Harbor Light Center.  It was recommended that Father complete intensive outpatient treatment as well as Fatherhood Engagement to address employment, anger management, parenting skills, and developing supports to remains [sic] sober.

> 26.  Father completed a substance abuse assessment in September 2017.  At that time, Father was struggling with methamphetamine and opiate use.  Father reported his longest period of sobriety was approximately three and one-half (3 ½) years while in prison.  It was recommended that Father participate in intensive outpatient treatment (IOP) and individual counseling.

27. Father failed to participate in intensive outpatient treatment as recommended. Father failed to regularly attend individual counseling as scheduled. In January 2018, Harbor Lights reported Father had returned for detoxification only but refused additional recommended treatment.

28. During the CHINS proceedings, Father tested positive for the presence of drugs on 07/27/2017 (amphetamine/methamphetamine), 10/12/2017 (cocaine/amphetamine/methamphetamine), 10/25/2017 (amphetamine/methamphetamine), and 01/29/2018 (methamphetamine). Father failed to submit to all drug screens as requested.

29. Father failed to complete a recommended psychological evaluation.

30. Father's overall participation in case management services was limited. Father failed to regularly attend sessions as scheduled. When present, Father was generally disengaged. Father failed to make progress toward goals of stable employment, stable housing, financial management, enhanced parenting skills, and sobriety. Father was unsuccessfully discharged from several providers.

31. Father only sporadically attended parenting time as scheduled. Father was capable of meeting the basic needs of the children. However, Father was often distracted and disengaged from the children. Father was easily frustrated and regularly redirected to remain calm in front of the children. Father was unsuccessfully discharged from parenting time services for lack of attendance. Father failed to attend a scheduled visit on December 15, 2017 and has had no contact with the children since that time.

32. CASA, Kelsey Andrews, supports termination of parental rights and adoption in the best interests of the children. The children require a safe and stable environment. The parents have failed to maintain stable employment or housing to provide for the children. The parents have continued sporadic substance abuse. Father has ceased all efforts toward reunification. Although initial separation of the siblings was not an ideal situation, the children are bonded with their respective placements and doing very well. The respective placements have arranged for ongoing contact between the siblings.

(Father's App. Vol. II at 30.)

[24] Father argues termination of his parental rights is not in Children's best interests because even though he "allegedly cannot provide the perfect home[,]" that fact is irrelevant because he "loves his children" and "has a strong bond with his children." (Br. of Father at 20.) However, the trial court's findings tell a much different story. As Father does not challenge those findings and they stand as true, *see Madlem*, 592 N.E.2d at 687 (unchallenged findings determined to be true), and those findings support the trial court's conclusion that termination of Father's parental rights was in Children's best interests, we find no error. *See Prince v. Dept. of Child Servs.*, 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007) (termination in children's best interests based on Mother's habitual pattern of drug use and non-compliance with services).

# Conclusion

[25] Mother has not demonstrated she suffered prejudice when the trial court did not require DCS to reinstate visitation with Children following the filing of the

petition for termination, and we conclude her due process rights were not violated. Additionally, Father's due process rights were not violated for the reasons he advances. Finally, the trial court's findings support its conclusion that the termination of Father's rights to Children were in Children's best interests. Accordingly, we affirm.

[26] Affirmed.

Najam, J., and Bailey, J., concur.